In re Terry L. WINTERLAND, Judith
D. Winterland, Debtors.

Bankruptcy No. 87–71831.

United States Bankruptcy Court,
C.D. Illinois.

March 29, 1988.

Mark T. Dunn, Bloomington, Ill., for debtor.

Tim Swaim, Peoria, Ill., Marilyn E. Anderson, Washington, D.C., for FDIC.

William F. Costigan, Bloomington, Ill., for creditors.

Robert L. Sullivan, Bloomington, Ill., trustee.

OPINION

LARRY L. LESSEN, Chief Judge.

The issue before the Court is whether the automatic stay of 11 U.S.C. Sec. 362 should be lifted so that the Federal Deposit Insurance Corporation ("FDIC") may proceed against the Debtor and other Defendants in a lawsuit pending in the Federal District Court.

The Debtor, Terry Winterland, served as a member of the Board of Directors of the First National Bank of Danvers ("Bank") from January 10, 1978, to June 1, 1983. He served as President of the Bank from February 1, 1978, to June 1, 1983. He was also the Bank's primary loan officer during this time.

There was a significant increase in loan volume at the Bank in 1978. From 1978 to 1983, the net loans increased from $900,-000.00 to $9,000,000.00, and the net loans to total deposit ratio increased from 17.3% to 71.25%.

Serious loan delinquencies began to appear at the Bank in 1980. Almost $600,-000.00 in loans were charged off between 1980 and 1983.

In October 1981, the Bank and the Office of the Comptroller of Currency of the United States of America ("OCC") entered into a Memorandum of Understanding. The Bank operated under the close scrutiny of the OCC from this point until August 5, 1983, when the OCC declared the Bank insolvent and closed it. The FDIC was appointed receiver and OCC transferred possession of the Bank's assets, including existing claims and causes of action, to the FDIC in its capacity as receiver. The FDIC, in its capacity as receiver of the Bank, then sold the Bank's claims and choses in action to the FDIC in its corporate capacity.

Two weeks before the closing of the Bank, the Bank filed a suit against the Debtor in state court alleging negligence, lending violations, and breach of duty to exercise a high degree of care. On August 26, 1983, the FDIC filed a motion to be substituted as party Plaintiff and a separate motion to voluntarily dismiss the pend-

ing complaint against the Debtor. Both motions were granted on September 14, 1983.

On June 13, 1986, the FDIC filed a six-count complaint against John Yoder, Bernard Argo, John Stuckey, Patricia Yoder, and the Debtor, as former Directors and officers of the Bank. The complaint alleges negligent lending practices, lending limit violations, violations of the oath required of directors by the National Bank Act, breach of fiduciary duties and breaches of both an expressed contract and an implied contract. The FDIC claims that the alleged negligence of the officers and Board of Directors lead to the failure of the Bank. The FDIC seeks damages of $2.7 million dollars.

The Debtor filed his petition pursuant to Chapter 7 of the Bankruptcy Code on October 29, 1987.

On November 25, 1987, the FDIC filed a motion to lift the automatic stay for the purpose of allowing the FDIC to proceed against the Debtor in Federal District Court to the extent that there is insurance available to cover the liability of the Debtor. The FDIC does not seek to collect any judgment personally from the Debtor. The FDIC asserts that if the Debtor is absent from the District Court actions, the other Defendants might shift the blame to the Debtors. If the other Defendants succeeded in shifting the blame to the Debtor, and the Debtor were not a Defendant in the case, then the FDIC would recover nothing. On the other hand, if the Debtor remained a Defendant in the case, then even if the other Defendants persuaded the jury that the Debtor alone was responsible for the Bank's losses, a judgment against the Debtor alone would still be covered by the available insurance.

The Debtor opposes the lifting of the automatic stay. The Debtor argues that he will suffer substantial prejudice if the stay is lifted because he will be forced to participate in continued litigation regarding a debt that is clearly dischargeable, but he may have no insurance coverage or other means to pay for his defense. The Debtor states that the insurance carrier has reserved its rights under the insurance policy based on several reasons, including lack of proper notice and lack of timely notice. Thus, although defense costs are provided under the policy if coverage is established, the Debtor argues that he may have to repay the insurance carrier for any fees advanced on his behalf if it is subsequently established that there was no insurance coverage.

In determining whether the automatic stay should be lifted, the Court must balance the prejudice to the Debtor or the Debtor's estate from the continuation of the civil action against the hardship that the creditor will suffer from a continuation of the automatic stay. *In re Holtkamp*, 669 F.2d 505, 508 (7th Cir.1982.). As Judge Altenberger recently explained:

> "[T]he test is whether or not: a) any 'great prejudice' to either the bankruptcy estate or the Debtor will result from continuation of the civil suit, b) the hardship to the plaintiff by maintenance of the stay considerably outweighs the hardship to the Debtor, and c) the creditor-plaintiff has a probability of prevailing on the merits of his case.

In prior decisions, the Courts have considered a variety of factors which affect the balancing of the interest. Of predominant importance in these decisions have been the hardships to the plaintiff of protracted litigation and the expense of time and money to the Debtor–in–Possession in defending these actions. A number of Courts have attributed a considerable weight to the fact that a plaintiff, by having to wait, may effectively be denied an opportunity to litigate. The aging of evidence, loss of witnesses, and crowded court dockets are factors which contribute to these hardships. The opinions reflect that the Courts have regarded the opportunity to litigate the issue of liability as a significant right which cannot be easily set aside, despite the existence of a bankruptcy proceeding. They have also considered as significant the judicial economy of continuing existing actions rather than beginning the suit anew in another form.

The Courts have not, however, ascribed much significance to the fact that the Debtor will be required to participate in their defense, especially when the debtor's insurer is obligated to provide counsel. This position has been sustained despite the fact that the debtor was uninsured and was required to assume the costs of his own defense. Although one Court has held that the cost and time barriers of continued litigation were sufficient so as to justify a maintenance of the stay, the exceptional enormity of that case mandated a conclusion different than those in prior decisions. (Citations omitted.)"

*In re Parkinson*, 102 B.R. 141, 142 (Bankr.C.D.Ill.1988), quoting *In re Bock Laundry Mach. Co.*, 37 B.R. 564, 566–67 (Bankr.N.D.Ohio 1984).

In the case at bar, the FDIC has demonstrated cause for lifting the automatic stay. As recognized in *Parkinson*, "[s]eparating the actions against the Debtor and the other Defendant might lead to attempts by each Defendant to shift the blame to the other and thereby deny Plaintiff any relief". *In re Parkinson*, slip op. at p. 2. This "blame shifting" problem is clearly evident in this case. As the Bank's primary loan officer, the Debtor had direct contact with the Bank's customers. As President, he was also responsible for the day to day operation and administration of the Bank. The Debtor's Codefendants, who were Directors of the Bank, have attempted to absolve themselves of liability by asserting that the Debtor alone was responsible for the Bank's losses. If this finger-pointing defense is successful and the Debtor is not a Defendant, the FDIC would recover nothing and the insurance company would have a great windfall. Under these circumstances, the Court finds that the FDIC has demonstrated cause for lifting the automatic stay.

The Court is not convinced by the Debtor's argument that lifting the stay would constitute "great prejudice" to him. The FDIC seeks to lift the stay only to the extent that there is insurance coverage. The Debtor will not have to pay any judgment out of his personal funds.

The Debtor notes that the insurance policy provides that defense costs are included within the policy definition of "loss". Thus, any sums advanced for the Debtor's defense will reduce the amount of insurance money which is available to satisfy a judgment in favor of the FDIC. Based on these facts, it is difficult to follow the Debtor's argument that he will be prejudiced if the costs of his defense increase. If defense costs are deducted from the available insurance, the amount available to the FDIC is reduced. The Debtor is not prejudiced by the fact that some of the available insurance is consumed by defense costs. Any loss in the available insurance belongs to the FDIC, not to the Debtor.

The Debtor also argues that he will be greatly prejudiced by his participation in "years of continued litigation". Courts have generally not ascribed much significance to the fact that a Debtor will have to participate in litigation. *See, In re Bock Laundry Mach. Co., supra*, 37 B.R. at 567. This Court agrees that mere participation in a civil suit does not constitute great prejudice.

The Debtor next argues that he may be potentially liable to repay the insurance company the defense costs if it is subsequently determined that there is no insurance coverage, and that this would constitute great prejudice to him. The Court recognizes that a large number of cases have held that the high cost of defending an action in another Court does not constitute great prejudice which would preclude modifications of the stay. *In re UNR Industries, Inc.*, 54 B.R. 266, 269 (Bankr.N.D. Ill.1985); *In re Unioil*, 54 B.R. 192, 195 (Bankr.D.Col.1985); *In re Rabin*, 53 B.R. 529, 532 (Bankr.D.N.J.1985); *In re Bock Laundry Mach. Co.*, 37 B.R. 564, 567 (Bankr.N.D.Ohio 1984); *In re Steffens Farm Supply, Inc.*, 35 B.R. 73, 75 (Bankr. N.D.Iowa 1983); *In re McGraw*, 18 B.R. 140, 142 (Bankr.W.D.Wis.1982); *In re Terry*, 12 B.R. 578, 582 (Bankr.E.D.Wis.1981). These cases are readily distinguishable from the case at bar. *UNR, Unioil, Ra-*

*bin,* and *Bock* were all Chapter 11 reorganization cases. *Terry* was a Chapter 13 case. The issue in those cases was whether the claim was going to be liquidated in the nonbankruptcy forum or estimated by the Bankruptcy Court. In either case, the debtor would have had to pay an attorney to represent the interests of the estate. *See, In re Rabin, supra,* 53 B.R. at 531. Thus, the defense costs of the nonbankruptcy action would not constitute a substantial additional burden to the debtor. Similarly, if the claims pending in the nonbankruptcy forum also constituted the basis for a nondischargeability complaint or an objection to discharge in the Bankruptcy Court, the defense costs in the nonbankruptcy forum would not be an additional burden on the Debtor. *See, In re Parkinson, supra.* It would simply be a question of paying a lawyer to handle the claim in the nonbankruptcy forum or in the Bankruptcy Court. Either way, the debtor still has to pay an attorney. The case at bar is a Chapter 7, no asset case and the claim in the nonbankruptcy forum is clearly dischargeable in the bankruptcy. Thus, the Debtor would not have to incur personally attorney fees to handle this issue in the Bankruptcy Court. It therefore follows that the Debtor should not have to incur attorney fees to defend himself in the District Court action.

The holding is not inconsistent with *McGraw* and *Steffens Farm Supply.* In both *McGraw* and *Steffens,* the plaintiff needed a judgment against the debtor in order to prevail over the nonbankruptcy codefendants. In *McGraw,* the plaintiff sought recovery from the debtor's former employer under the doctrine of *respondant superior.* Without the debtor, the plaintiff could not establish the requisites of *respondant superior,* or satisfy the comparative negligence requirements of Wisconsin law. In *Steffens Farm Supply, Inc.,* the plaintiff alleged a violation of Article 6 of the UCC when the debtor transferred in bulk its assets to the codefendant. Without a judgment against the debtor, the plaintiff could not pursue the codefendant. In the case at bar, the FDIC does not need a judgment against the Debtor in order to

get full relief from the Codefendants. The liability of the Codefendants is not dependent on the liability of the Debtor. Thus, the Debtor is not a necessary party to the action against the Codefendant. Rather, as a matter of trial tactics, the FDIC wants the Debtor to be present as a Defendant in the District Court action in order to avoid the previously discussed blame shifting problem. Since the FDIC wants the Debtor in the District Court action as a matter of its trial tactics, the FDIC should be prepared to reimburse the Debtor for his reasonable attorney's fees in the event that the fees are not covered by insurance.

In reaching this conclusion, the Court notes that this is not a case where the Debtor may draw upon the efforts of his Codefendants in defending himself against the FDIC action. *See, In re Unioil, supra,* 54 B.R. at 195. The Codefendants in this case are pointing the finger at the Debtor and blaming the Debtor for the Bank's failure. They will not be a likely source of help for the Debtor at the trial.

Moreover, although the FDIC may not collect any judgment personally from the Debtor and it does not appear that there are any criminal implications in the FDIC lawsuit, the Court believes the Debtor is entitled to an attorney to represent his interests. A judgment against the Debtor could have a profound impact on the Debtor's reputation and future earning power.

The final consideration for the Court is whether the FDIC has a probability of prevailing on the merits of its case. A review of the FDIC's complaint in the District Court action indicates that the Bank was declared insolvent in 1983. The complaint alleges that the Defendant failed to follow sound and prudent lending policies which could have prevented or reduced the problems which led to the Bank's insolvency. These allegations set forth a cause of action which offers a chance of some recovery.

For the foregoing reasons, the Court concludes that the automatic stay of 11 U.S.C. Sec. 362 should be modified to allow the FDIC to proceed against the Debtor and other Defendants in *FDIC v. Yoder, et al.,*

No. 86–3189 (C.D.Ill.Spfld.Div.), but that the FDIC is barred and enjoined from collecting from the Debtor, the Debtor's property, or property of the bankruptcy estate any judgment awarded in the District Court action. The Court further finds that in the event that the Debtor's attorney's fees are not covered by insurance, the FDIC will be directed to reimburse the Debtor for his reasonable attorney's fees and court costs.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.