938 F.2d 731
 60 USLW 2138, 21 Bankr.Ct.Dec. 1565,
Bankr. L. Rep. P 74,126
 In the Matter of FERNSTROM STORAGE AND VAN COMPANY, an
Illinois Corporation, Fernstrom Storage and Van Company of
Virginia, a Virginia Corporation, Fernstrom Storage and Van
Company of Minnesota, a Minnesota Corporation, and Bradley
Moving and Storage Company, a Michigan Corporation, Debtors.
INTERNATIONAL BUSINESS MACHINES, Plaintiff-Appellee,
v.
FERNSTROM STORAGE AND VAN COMPANY, and Bradley Moving and
Storage Company, Defendants-Appellants.
 No. 90-1213.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 1, 1991.
Decided July 25, 1991.
As Modified Aug. 23, 1991.
 
 Edward M. Kay (argued), James T. Ferrini, Robert E. Gilmartin, Lisa Marco Kouba, Clausen, Miller, Gorman, Caffrey & Witous, M. Scott Michel, Dept. of Justice, U.S. Trustee, Chicago, Ill., for plaintiff-appellee.
 John F. Horvath (argued), Horvath, Lieber & Quilici, Stephen P. Eisenberg, Leahy, Eisenberg & Fraenkel, Chicago, Ill., for defendants-appellants.
 Before POSNER, FLAUM and KANNE, Circuit Judges.
 FLAUM, Circuit Judge.
 
 
 1
 On June 30, 1979, fire damaged a Birmingham, Michigan, warehouse owned by debtor Bradley Moving and Storage Company, a subsidiary of debtor Fernstrom Storage and Van. The blaze destroyed $800,000 worth of computer equipment owned by International Business Machines (IBM) that was stored in the warehouse at the time. IBM presented a claim for damages to Fernstrom on March 12, 1980. When Fernstrom refused to pay, IBM filed a claim with its insurer, which reimbursed the computer maker for the lost equipment.
 
 
 2
 Fernstrom, too, was insured, under two policies which, taken together, provided for coverage up to a maximum of $750,000 per policy year. IBM's insurer asserted a subrogation claim against Fernstrom in the amount of the insurer's payment to IBM, and entered into negotiations with Fernstrom's insurers, Home Insurance and St. Paul Fire & Marine. One of these insurers agreed to pay IBM's insurer $75,000, but refused to pay more. Subsequent negotiations between IBM's insurer and Fernstrom's insurers concerning the balance of IBM's claim proved fruitless, and on June 30, 1982, IBM filed suit against Fernstrom in district court. The case was assigned to Judge Hart; jurisdiction was founded on diversity of citizenship.
 
 
 3
 Unknown to IBM at the time it filed suit, and for six years thereafter, in October 1980 Fernstrom and its subsidiary Bradley had filed for protection from their creditors pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. Sec. 1101 et seq. IBM was named as a creditor in the schedules Fernstrom filed with the bankruptcy court, but the amount Fernstrom indicated it owed IBM related not to the fire loss but rather to computer equipment Fernstrom had leased from IBM. IBM filed proofs of claim for the amounts Fernstrom owed for the leased equipment, but did not file a proof of claim for the equipment destroyed in the fire.
 
 
 4
 In the six years after it was filed, the civil action brought by IBM--in truth, by IBM's insurer--against Fernstrom--in truth, against Fernstrom's insurers--spawned extensive discovery and numerous motions. In March 1988 counsel for IBM and Fernstrom appeared before Judge Hart to discuss the scheduling of the trial. At that meeting, Fernstrom's counsel for the first time informed IBM and the district court that his client had filed for bankruptcy in 1980. Fernstrom filed a motion to dismiss on the ground that the suit was stayed by the pending bankruptcy. Judge Hart granted this request, dismissing the action with leave to reinstate if the bankruptcy judge consented to modify the stay to the extent necessary to allow IBM's action to proceed.
 
 
 5
 In the bankruptcy court IBM moved to modify the stay and return the action to Judge Hart. In an erudite and comprehensive opinion, In re Fernstrom Storage and Van, 100 B.R. 1017 (Bankr.N.D.Ill.1989), Judge Sonderby granted IBM's motion. Judge Sonderby noted that IBM had stipulated that it would only seek to recover up to the $750,000 limit provided in Fernstrom's insurance policies, meaning that if the dismissed district court action were reinstated and IBM won, its claim would be satisfied solely from the proceeds of Fernstrom's insurance. She reasoned that allowing IBM to collect from these insurers would not deplete the assets contained in Fernstrom's bankruptcy estate. Not allowing IBM to proceed with its civil action, by contrast, would work considerable hardship on the computer firm, which had spent six years prosecuting its district court action against Fernstrom only to have its suit dismissed shortly before trial. Fernstrom appealed Judge Sonderby's decision to the district court, which agreed with the bankruptcy court that the automatic stay should be lifted to allow IBM's civil action against Fernstrom to proceed. We affirm the decision of the district court.
 
 I. PROOF OF CLAIM REQUIREMENT
 
 6
 Fernstrom's first argument on appeal is that IBM's failure to file a timely proof of claim against Fernstrom for the amount at issue in the subrogation action bars the computer maker from pursuing its claim against Fernstrom. IBM responds that since it only seeks to recover from Fernstrom's insurers, it was not required to file a proof of claim in Fernstrom's bankruptcy proceeding.
 
 
 7
 Section 501(a) of the bankruptcy code allows, but does not require, creditors of the bankruptcy estate to file proofs of claim. 11 U.S.C. Sec. 501(a). Under Code Sec. 502, however, only a "claim or interest, proof of which is filed under section 501," may be deemed an allowed claim that entitles the party asserting the claim to share in the distribution of assets from the bankruptcy estate. 11 U.S.C. Sec. 502(a). See, e.g., In re Thomson McKinnon Securities, 125 B.R. 88, 92 (Bankr.S.D.N.Y.1991); In re Nutri*Bevco, 117 B.R. 771, 778 (Bankr.S.D.N.Y.1990); In re Stamford Color Photo, 105 B.R. 204, 206 (Bankr.D.Conn.1989); In re Butterworth, 50 B.R. 320, 322 (Bankr.W.D.Mich.1984). In this case, it is undisputed that IBM failed to file a proof of claim within the time limits set by the bankruptcy court. See R.Bankr.Pro. 3002(c).
 
 
 8
 We agree with the bankruptcy and district courts that IBM's failure to file a claim should not bar it from recovering against Fernstrom's insurers. We find support for this conclusion in the Eleventh Circuit's decision in In re Jet Florida Systems, 883 F.2d 970 (11th Cir.1989). In Jet Florida, the debtor was sued by a former employee, Owaski, who had been fired because of his alleged involvement in the sabotage of a Jet Florida airplane. Owaski sued in state court, claiming that Jet Florida had defamed him. When Jet Florida subsequently sought protection from its creditors under Chapter 11, Owaski "filed a proof of claim with respect to unpaid wages and benefits [but] he filed no proof of claim pertaining to his defamation action." 883 F.2d at 972. Owaski agreed to limit his recovery to what he could obtain from Jet Florida's liability insurer. Id. The district court held that Owaski could proceed with his defamation action against Jet Florida "to establish the debtor's liability in order to recover from the debtor's insurer," id. at 973, reasoning that allowing the suit to proceed would in no way hamper the debtor. Id. The Eleventh Circuit agreed, and adopted the district court's opinion as its own.
 
 
 9
 Another case that supports the conclusion that the failure to file a proof of claim does not preclude an action against the debtor to establish liability that will be satisfied by a third party is In re Turner, 55 B.R. 498 (Bankr.N.D.Ohio 1985). In Turner the debtor was a loan officer who had been fired from his job with a bank after he approved several loans that went bad under suspicious circumstances. The bank filed a civil RICO action against Turner and others, seeking to recover the amounts it lost on the bad loans. Turner had previously filed a petition in bankruptcy, but the bank failed to "file[ ] any proofs of claim for the alleged RICO violations of the debtor...." 55 B.R. at 500. The Bank stipulated that it would not seek to collect damages from Turner, but argued that it needed to obtain a finding of liability against Turner before it could be compensated by a surety which had sold the bank a fidelity bond to cover losses caused by embezzling employees. 55 B.R. at 502. The bankruptcy court was persuaded that allowing the case to go forward despite the bank's failure to file a proof of claim would not harm the estate or prejudice other participants in Turner's bankruptcy proceeding.
 
 
 10
 The precise legal issue in Jet Florida was whether further proceedings in Owaski's defamation suit violated the post-discharge injunction against the continuation of pre-petition legal proceedings provided for in Bankruptcy Code Sec. 524(a)(3). In Turner the issue was whether the suit against the debtor could go forward despite the automatic stay of proceedings provided in Code Sec. 362(a) (an issue also raised in this case and discussed below). We believe, however, that the reasoning in both cases defeats Fernstrom's argument that a creditor's failure to file a proof of claim bars a subsequent action against the debtor in which all the plaintiff seeks is a declaration of liability.
 
 
 11
 "The purpose of the proof of claim is to alert the court, trustee, and other creditors, as well as the debtor, to claims against the estate." In re Daystar of California, 122 B.R. 406, 408 (Bankr.C.D.Cal.1990); In re Stern, 70 B.R. 472, 476 (Bankr.E.D.Pa.1987). By providing creditors with a limited time period in which to assert their claims, the Bankruptcy Code and Rules enable the various participants in a bankruptcy proceeding to determine the amount and nature of claims against the estate, information essential to the distribution of the estate's assets or the formulation of an equitable plan of reorganization. As in Turner and Jet Florida, in this case the creditor holding the claim for which no proof was filed has agreed that all it will seek from the debtor is a determination of liability. This determination will neither deplete the debtor's assets or otherwise interfere with the administration of the bankruptcy proceeding, nor hinder the debtor's fresh start at the close of the proceeding. Rather, it will operate only as "a prerequisite to recovery against another entity." In Re Walker, 927 F.2d 1138, 1142 (10th Cir.1991). In such a situation, the notice function served by the rule that only proven claims will be allowed to share in the distribution is not frustrated by allowing a creditor that has not filed a proof of claim to proceed against the debtor.
 
 II. RELIEF FROM AUTOMATIC STAY
 
 12
 Fernstrom's next argument is that the bankruptcy judge erred in modifying the automatic stay of all proceedings against it, allowing IBM's civil suit in district court to proceed. It argues that IBM's suit, filed after Fernstrom's petition in bankruptcy, has been in violation of the stay since its inception, and that allowing IBM to continue an action to obtain the proceeds of Fernstrom's insurance policies will further contravene the automatic stay. IBM responds that the balance of equities, particularly Fernstrom's six-year delay in asserting its pending bankruptcy proceeding as a bar to the civil suit, favors the modification of the stay to allow its action against Fernstrom to proceed. Here, too, we agree with IBM.
 
 
 13
 "The automatic stay provision of the Bankruptcy Code, Sec. 362(a), has been described as one of the most fundamental debtor protections provided by the bankruptcy laws." Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection, 474 U.S. 494, 503, 106 S.Ct. 755, 760, 88 L.Ed.2d 859 (1986) (footnote and internal quotations omitted). See also Matthews v. Rosene, 739 F.2d 249, 251 (7th Cir.1984). Section 362(a) bars "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title...." Since IBM's civil action names Fernstrom as a defendant and was not commenced until after Fernstrom filed for bankruptcy and the stay issued, it certainly could be barred by the stay.
 
 
 14
 Though Sec. 362(a) provides for a nearly comprehensive stay of proceedings against the debtor, Sec. 362(d) requires the bankruptcy judge "to grant relief from the stay ... for cause." " 'Cause' " as used in Sec. 362(d) "has no clear definition and is determined on a case-by-case basis." In re Tucson Estates, 912 F.2d 1162, 1166 (9th Cir.1990). See also In re Makarewicz, 121 B.R. 262, 264 (Bankr.S.D.Fla.1990); In re Revco D.S., 99 B.R. 768, 777 (Bankr.N.D.Ohio 1989). Nevertheless, a number of themes emerge from the cases interpreting Sec. 362(d)'s expansive language. As we wrote in Matthews, 739 F.2d at 251, "[s]uspension of [the automatic stay] may be consonant with the purposes of the Bankruptcy Act when equitable considerations weigh heavily in favor of the creditor and the debtor bears some responsibility for creating the problems." An influential district court opinion adopts a three factor test for determining whether "cause" exists, asking whether
 
 
 15
 a) Any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit,
 
 
 16
 b) the hardship to the [non-bankrupt party] by maintenance of the stay considerably outweighs the hardship of the debtor, and
 
 
 17
 c) the creditor has a probability of prevailing on the merits.
 
 
 18
 In re Pro Football Weekly, 60 B.R. 824, 826 (N.D.Ill.1986) (bracketed text in original, internal quotations omitted). See also In re Bock Laundry Machine, 37 B.R. 564, 566 (Bankr.N.D.Ohio 1984).
 
 
 19
 Applying this test, we first inquire into the prejudice that Fernstrom or the bankruptcy estate will suffer if we allow IBM's action against Fernstrom to proceed despite the stay. Fernstrom argues, first, that the proceeds of its insurance policies are property of the bankruptcy estate, meaning that a suit which seeks to recover these proceeds is a suit against the debtor. So it is, at least nominally.[1] But cases like In re Turner, discussed above, suggest that suspending the stay is appropriate where all the plaintiff seeks is a declaration of liability with no monetary consequences for the debtor, as opposed to its insurer. We reached a similar conclusion in Matter of Holtkamp, 669 F.2d 505, 508-09 (7th Cir.1982), reasoning there that allowing a personal injury action against the debtor to proceed did not harm the debtor where the debtor's insurance company had "assumed full financial responsibility for defending that litigation." See also Foust v. Munson S.S. Lines, 299 U.S. 77, 87, 57 S.Ct. 90, 95, 81 L.Ed. 49 (1936) (allowing wrongful death action against bankrupt defendant to proceed despite stay; plaintiff "entitled to maintain an action against the insurer for the amount of his judgment but not exceeding the amount of insurer's liability to the debtor under the policy."); In re Adolf Gobel, Inc., 89 F.2d 171, 172 (2d Cir.1937); In re Winterland, 101 B.R. 547 (C.D.Ill.1988); In re Honosky, 6 B.R. 667, 669 (Bankr.S.D.W.Va.1980). Other cases have applied the same reasoning in allowing suits against debtor defendants to proceed in spite of the post-discharge injunction provided for in Code Sec. 547. See, e.g., In re Jet Florida Sys., discussed above; In re White, 73 B.R. 983, 985 (Bankr.D.D.C.1987). We agree with the conclusion these cases reach: debtors-defendants suffer little prejudice when they are sued by plaintiffs who seek nothing more than declarations of liability that can serve as a predicate for a recovery against insurers, sureties, or guarantors.
 
 
 20
 Alternatively, Fernstrom characterizes IBM's civil action as a suit against Fernstrom's insurers, and argues that the suit falls within one of two exceptions to the general rule that the stay does not bar actions against a debtor's insurers, guarantors, or sureties. See Code Sec. 362(a)(1) ("proceeding against the debtor"); Sec. 362(a)(2) ("against the debtor or against property of the estate"); Matter of Lockard, 884 F.2d 1171, 1179 (9th Cir.1989) (surety); Credit Alliance Corp. v. Williams, 851 F.2d 119, 121 (4th Cir.1988) (guarantor); Browning Seed, Inc. v. Bayles, 812 F.2d 999, 1004 (5th Cir.1987) (same); Otoe County Nat'l Bank v. W & P Trucking, 754 F.2d 881, 883 (10th Cir.1985) (same). The two exceptions to the rule permitting suits against third parties are closely related. The first is applicable where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999 (4th Cir.), cert. denied, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986). The second operates where the pending litigation, though not brought against the debtor, would cause the debtor, the bankruptcy estate, or the reorganization plan "irreparable harm." In re Lomas Fin., 117 B.R. 64, 67 (S.D.N.Y.1990), remanded, 932 F.2d 147 (2d Cir.1991). See also In re North Star Contracting Corp., 125 B.R. 368, 370 (S.D.N.Y.1991).
 
 
 21
 We believe that Fernstrom fits within neither of these exceptions. As to the "identity of interest" exception recognized in A.H. Robins, this doctrine rests on special circumstances not present here. In Robins, the Fourth Circuit was animated by the fear that allowing product liability actions to proceed against Aetna, Robins' insurer, despite the latter's bankruptcy, would harm the manufacturer of the Dalkon Shield by "reduc[ing] and diminish[ing] the insurance funds or pool represented in Aetna's policy in favor of Robins and thereby affect the property of the debtor to the detriment of the debtor's creditors as a whole." 788 F.2d at 1008. We recognize that in this case IBM's claim, if successful, will exhaust all of Fernstrom's insurance coverage for the year of the fire. However, under IBM's agreement to claim damages only to the limit of Fernstrom's liability coverage, its potential recovery against Fernstrom will not extend beyond the proceeds of Fernstrom's insurance policies. The parties agree that there are at present no other claimants to Fernstrom's insurance for the claims year 1979, and neither party has suggested that such claimants exist. We are not faced with the "unusual situation," 788 F.2d at 999, present in Robins.
 
 
 22
 Nor are we faced with a situation in which further prosecution of IBM's suit will impair Fernstrom's ability to formulate a plan of reorganization or otherwise do Fernstrom "irreparable harm." As became clear at oral argument, this is at present a suit between insurance companies, with Fernstrom's insurers retaining and paying the counsel that have represented the debtor in this action, and IBM's insurer doing the same for plaintiff's counsel. This arrangement reflects the real economic interests in this suit, which are those of the various insurers rather than of Fernstrom or IBM. Allowing the suit to go forward will not impair Fernstrom's ability to reorganize.
 
 
 23
 The other two prongs of the balancing test identified in In re Pro Football Weekly, supra, merit little additional discussion. A decision continuing the application of the stay to IBM's action would cause it great prejudice by forcing it, in effect, to write off the expenses it incurred in litigating its case against Fernstrom to the eve of trial. Where the stayed non-bankruptcy litigation has reached an advanced stage, courts have shown a willingness to lift the stay to allow the litigation to proceed. See e.g., In re Murray Indus., 121 B.R. 635, 637 (Bankr.M.D.Fla.1990); In re Kaufman, 98 B.R. 214, 215 (Bankr.E.D.Pa.1989); cf. In re Sonnax Indus., 907 F.2d 1280, 1287 (2d Cir.1990) (declining to lift stay in part because "the litigation in state court has not progressed even to the discovery stage."); In re Collins, 118 B.R. 35 (Bankr.D.Md.1990) (declining to lift stay where parties in state court proceeding had not yet begun discovery). The attention paid to the stage to which the non-bankruptcy litigation has progressed is based on the sound principle that the further along the litigation, the more unfair it is to force the plaintiff suing the debtor-defendant "to duplicate all of its efforts in the bankruptcy court." Murray Indus., 121 B.R. at 637. Given the advanced stage that IBM's district court action reached before Fernstrom asserted the stay, this factor weighs heavily in favor of modifying the stay to allow IBM's action to proceed.
 
 
 24
 We come to the last of the Pro Football Weekly factors, the likelihood of success on the merits enjoyed by the plaintiff seeking the lifting of the stay. We note only that the fact that one of Fernstrom's insurers made an initial payment on IBM's claim suggests that IBM's suit is not frivolous. The balance of these three factors suggests that the bankruptcy court acted well within its discretion, see Sonnax, 907 F.2d at 1286; Holtkamp, 669 F.2d at 507, in modifying the stay and allowing IBM to renew its case against Fernstrom in district court.
 
 III. CONCLUSION
 
 25
 For the foregoing reasons, the decision of the district court affirming the decision of the bankruptcy court in favor of International Business Machines is
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 Illinois prohibits direct actions against insurers. See Richardson v. Economy Fire & Cas. Co., 109 Ill.2d 41, 49-51, 92 Ill.Dec. 516, 520, 485 N.E.2d 327, 331 (1985) (direct actions "are prohibited by the public policy of this State...."); Zegar v. Sears, Roebuck & Co., 211 Ill.App.3d 1025, 156 Ill.Dec. 454, 458, 570 N.E.2d 1176, 1180 (1st Dist.1991)