**In re Michael G. HAINES, Debtor.**

No. 03–20529–JNF.

United States Bankruptcy Court, D. Massachusetts.

May 18, 2004.

Heather J. Lynham, Fairhaven, MA, for Debtor.

Roger Stanford, Stanford & Schall, New Bedford, MA, for Frieda Claes.

Stephen E. Shamban, Braintree, MA, for Chapter 7 Trustee.

## MEMORANDUM

JOAN N. FEENEY, Chief Judge.

## I. INTRODUCTION

The matters before the Court are the Motion of Frieda Claes ("Claes") for Relief from the Automatic Stay (the "Motion") and the Opposition to the Motion filed by Michael G. Haines (the "Debtor"). The Court heard the Motion and the Opposition on March 29, 2004 and directed the parties to file briefs by April 9, 2004.[1] At the hearing, neither party requested an evidentiary hearing. The Court finds that the material facts necessary to decide the matters are not in dispute and that the Court can resolve the issue presented, namely, whether Claes is entitled to relief from stay to seek compensation from the Residential Contractor's Relief Fund, *see* Mass. Gen. Laws. Ch. 142A, §§ 1–21 (West 2002), without a further hearing.

## II. PROCEDURAL AND FACTUAL BACKGROUND

The Debtor, a self-employed contractor doing business as Oceanview Renovations, filed a voluntary petition under Chapter 7 on December 29, 2003. He listed Claes as a creditor on Schedule F with a disputed claim in the sum of $25,000. Although the Chapter 7 Trustee has not filed a Report of No Distribution, a review of the Debtor's Schedules suggests that there are no non-exempt assets and thus little likelihood of a dividend to unsecured creditors.

The deadlines imposed by Federal Rules of Bankruptcy Procedure 4004 and 4007 with respect to complaints under 11 U.S.C. §§ 523, 727 have passed. Claes moved to extend the deadlines imposed by these Rules from March 29, 2004 to April 2, 2004, but she elected not to file a complaint against the Debtor under either § 523 or § 727 prior to April 2, 2004.

Claes filed her Motion seeking relief from the automatic stay on February 5, 2004; the Debtor filed his Opposition five days later. The parties agreed to a continuance of the hearing originally scheduled by the Court, and Claes filed a written waiver of the requirement imposed by 11 U.S.C. § 362(e).

In her Motion, Claes seeks relief from the automatic stay "to proceed with litigation pending in the New Bedford District Court entitled *Frieda R. Claes v. Michael G. Haines d/b/a Ocean View Renovations and Slade's Ferry Bank,* or in the alternative to commence arbitration to establish the amount of the moving party's claim." Claes represented in her Motion that the Debtor is a registered home improvement contractor; that he agreed to perform home improvements on her home in Fairhaven, Massachusetts, and that he failed to perform the work in a good and workmanlike manner. Claes further represented that, if granted relief from the automatic stay, she would proceed to liquidate her claim, either through litigation or arbitration, but seek payment only from the Residential Contractor's Guaranty Fund.[2]

---

**1.** The Chapter 7 Trustee did not object to Claes's Motion.

**2.** In her brief, Claes supplemented the factual assertions set forth in her Motion. She stated that during 2002 she employed the Debtor to perform renovations to her residence for a contract price of $39,474.38 and paid him

$34,370.38. After discovering that the work performed was substandard, she engaged an attorney, sent the Debtor a demand letter pursuant to Mass. Gen. Laws Ch. 93A, and subsequently commenced an action against him in the New Bedford District Court, Department of the Trial Court. She attached to

The Debtor opposed Claes's Motion on the ground that she failed to state sufficient cause for relief from the automatic stay. He added that "[s]uch relief would defeat the purpose of the Debtor filing for bankruptcy and defeat the protection the Debtor sought in the bankruptcy by exposing him to the further time and expense of litigation and/or arbitration as well as reimbursement sought by the Commonwealth for any monies that may pay out to the Creditor." The Debtor, in filing his Opposition, did not admit or deny the allegations in Claes's Motion, and thus did not comply with MLBR 4001–1(c). Accordingly, the Court finds that the allegations made by Claes that the Debtor is a registered home improvement contractor and may have breached his contract with her by failing to perform certain work in a competent manner are deemed admitted for purposes of determining her Motion.

### III. POSITIONS OF THE PARTIES

#### A. *Frieda Claes*

Claes maintains that she is entitled to relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1). She argues that Mass. Gen. Laws. Ch. 142A was established to protect homeowners from abuses by persons engaged in the home contracting services business and that the statute provides for a Guaranty Fund to reimburse homeowners injured as a result of the failure of licensed contractors to fulfill certain obligations with respect to written contracts or to perform or complete performance in a workmanlike manner. *See* Mass. Gen. Laws Ch. 142A, § 17.

Claes recognizes that payments from the Guaranty Fund are statutorily limited to

$10,000 and that the Fund Administrator would be subrogated to her with respect to any amounts paid from the Fund. Nevertheless, citing *In re Pro Football Weekly, Inc.*, 60 B.R. 824 (N.D.Ill.1986), she maintains that she has satisfied a three prong test for determining whether she has established cause for relief from the automatic stay. In her view, the test described by the court in *Football Weekly* must be understood in the context of the Debtor's Chapter 7 case, which is unlikely to produce a dividend to creditors.[3] She argues that, because she has paid the Debtor approximately $35,000 and will not be able to satisfy her claim in his "no-asset" bankruptcy case, her recovery, if successful, will be limited to the Guaranty Fund in the sum of $10,000. Although the Fund would be subrogated to the extent of any payment to her, she maintains that the automatic stay and the discharge would serve to protect the Debtor against any claim asserted by the Fund Administrator as subrogee. *See* Mass. Gen. Laws. Ch. 142A, § 8. She adds that any denial of renewal of the Debtor's registration on the part of the Administrator pursuant to § 12 of Ch. 142A would be excepted from the automatic stay because it would be within the police and regulatory powers provision of 11 U.S.C. § 362(b)(4). Claes also argues that she is likely to prevail on the merits of her claim against the Debtor.

#### B. *The Debtor*

The Debtor maintains that Claes has not established "cause" for relief from the automatic stay. He states:

> The Court should not find that the Creditor has cause for relief as, although the

---

her brief an estimate, dated March 25, 2004, of $25,000 for repairs to her property resulting from the Debtor's allegedly shoddy work.

**3.** The Court notes that the Trustee has not filed a Report of No Distribution, but the Court's review of the Debtor's Schedules suggests that there are no non-exempt assets available for liquidation by the Trustee.

Debtor believes he may be protected by his discharge from the Commonwealth's claim of reimbursement based upon an interpretation of 11 USCA § 523(a)(7) [sic], the relief from stay would continue to seriously effect the Debtor's financial condition.

The Debtor adds:

The exception to discharge of 11 U.S.C. § 523(a)(7) requires the debt be for a fine, penalty or forfeiture payable for the benefit of a governmental unit but not compensation for actual pecuniary loss. The phrase "not compensation for actual pecuniary loss" in 11 USCA § 523(a)(7) refers to the government's pecuniary loss. So long as the government's interest in enforcing the debt is penal, it makes no difference that injured persons may thereby receive compensation for pecuniary loss.... In the case at hand, the subrogation of the payments made by the guaranty fund is not penal in nature but rather reimbursement to the government for money lost in payment from the guaranty fund.... Nothing in the statute governing the guaranty fund indicates that the claim against the contractor qualifies as a fine or penalty. The government simply wants to get the money back. However, the Debtor questions the effect on his discharge of the final sentence of M.G.L.A. c. 142A § 8.... The Debtor argues that the bankruptcy code does not except this debt from discharge but the statute appears to qualify the debt as an exception. Is the Debtor then exposed to possible further litigation by the Commonwealth regarding dischargeability at further financial cost to the Debtor? ...

If the stay is lifted, the continued litigation and costs to the Debtor would undermine the purpose of bankruptcy protection. Further, the Debtor believes that the Contractors [sic] licensing board keeps records of guaranty fund claims and that such could effect the willingness of future clients to hire him.

## IV. DISCUSSION

### A. Applicable Law

#### 1. The Residential Contractors' Guaranty Fund

In 1991, the Massachusetts Legislature enacted legislation creating a Residential Contractors' Guaranty Fund to be administered within the office of consumer affairs and business regulation "to compensate owners for actual losses incurred by them as a result of registered contractor or subcontractor conduct which has been found by a court of competent jurisdiction to be work performed in a poor or unworkmanlike manner or which is a common law violation or a violation of any statute or regulation designed for the protection of consumers." Mass. Gen. Laws Ch. 142A, § 5. The statute authorizes a party to enforce its provisions and seek damages "in the superior court, the district court, or the small claims division of the district court," or to request arbitration in a program approved by the director or consumer affairs and business regulation. Id. at § 3. To obtain compensation from the Fund, an owner must establish "the contractor has filed for bankruptcy, fled the jurisdiction or the owner is otherwise unable to collect such judgment after execution" and that he or she has "exhausted all customary and reasonable efforts to collect the judgment." Id. at § 5.

An owner, a homeowner of a pre-existing owner-occupied building containing less than four units, see id. at 1, "may make a claim to the fund only if he has complied with the provisions of section 3 of this chapter, and has filed his claim with the fund within six months after the owner

has obtained a judgment or arbitration award, and has exhausted all such customary and reasonable efforts to collect the judgment or award." *Id.* at § 7. The Fund Administrator may award a homeowner $10,000 or "any amount necessary to compensate the owner for his actual loss, whichever is less." *Id.* The Plan Administrator may not award "any amount of consequential damages . . . or for personal injury, punitive damages, attorney's fees, court costs or interest." *Id.*[4]

Section 8 of the statute provides the following:

> When the fund administrator has paid from the fund any sum to a claimant, the fund administrator shall be subrogated to all the rights of the claimant up to the amount paid, and the claimant shall assign all the claimant's right, title, and interest in the claim up to the amount paid to the claimant by the fund administrator.
>
> Payment from the fund of any sum to a claimant under this section shall vest in the fund administrator a right to reimbursement to the fund, with interest, any money paid on account of the registered contractor or subcontractor found by the fund administrator to be responsible for the claim.
>
> If the amount paid from the fund, plus interest at a rate set by the fund administrator, is not repaid by the registered contractor or subcontractor on whose account a claim was paid in full, within thirty days after notice, the attorney general may seek legal proceedings to recover against the registered contractor or subcontractor the amount unpaid. The fund administrator shall be entitled to a judgment for such amount upon a showing that: (1) the registrant was afforded notice and an opportunity to be heard in legal actions which resulted in the judgment against the registrant, or in an arbitration proceeding pursuant to section four, and (2) no appeal is pending, and (3) the fund administrator has directed payment from the fund based on the final judgment of a court of competent jurisdiction, or an award of an arbitrator pursuant to section four.
>
> The fund shall be deemed a creditor with respect to any amount paid from the fund for the purpose of excepting [sic] to any discharge of the registered contractor or subcontractor under federal bankruptcy law.

*Id.* at § 8.

The statute also has provisions for the revocation or suspension of a contractor's certificate of registration:

> Prior to its expiration date, a certificate of registration may be suspended or revoked by the administrator, upon recommendation by the advisory board and in accordance with the procedures and on the grounds set forth in section eleven, or may be terminated by voluntary surrender by the registrant. *Further grounds for suspension or revocation are:* (a) a violation by a registrant or any agent or employee of the registrant

---

4. The statute specifically provides:

   The fund administrator may not award: (1) more than ten thousand dollars or any amount necessary to compensate the owner for his actual loss, whichever is less to any one claimant or; (2) more than seventy-five thousand dollars to claimants on account of the conduct of any one registered contractor or subcontractor within a twelve month period, unless after the fund administrator has paid out said seventy-five thousand dollars the registrant has repaid the fund the full amount; provided, however, that it is within the discretion of the fund administrator to waive the limit with cause; or (3) any amount for consequential damages, except as may be allowed under section four, or for personal injury, punitive damages, attorney's fees, court costs or interest.

   Mass. Gen. Laws Ch. 142A, § 7.

of any of the provisions of this chapter and (b) *the payment of any amount from the fund because of the conduct of a registered contractor or subcontractor where said contractor or subcontractor has not repaid the fund in full, including the appropriate amount of annual interest.*

*Id.* at § 15 (emphasis supplied).[5] Regulations further provide that if the Fund Administrator notifies the Attorney General, the Attorney General "shall be authorized to initiate proceedings in Superior Court against said contractor, subcontractor, his administrator, executor, or personal representative for failure to reimburse the fund." 201 Mass.Code tit. 201, § 14.21(13).

Significantly, for purposes of this decision, the regulations provide an alternative to the requirement of a court judgment or arbitration award. The regulations provide in pertinent part the following:

A court judgment or arbitration award required by M.G.L. c. 142A, § 5 and 201 CMR 14.00 may be satisfied by presenting to the Fund Administrator the following:

(a) documentation from United States Bankruptcy Court confirming that:

1. the contractor's debts have been discharged;

2. the bankruptcy case has been closed; and

3. the homeowner is precluded by the Bankruptcy Court from pursuing a court judgment or arbitration award against the contractor or subcontractor;

(b) proof of the existence of a valid cause of action arising out of the improvement of an owner-occupied, one-to-four family residential home by a registered contractor or subcontractor for conduct alleged to be work performed in a poor or unworkmanlike manner which is a common law violation or a violation of any statute or regulation designed for the protection of consumers;

(c) evidence that the claim was presented within two years and six months of the date the contract was signed by the parties;

(d) proof of actual loss calculated pursuant to M.G.L. c. 142A and 201 CMR 14.14.[6]

5. Section 12 of the statute also provides in pertinent part the following:
   No application for registration or renewal conforming to the requirements of this chapter may be denied except for a finding by the administrator that the applicant has done one or more of the following acts which are grounds for denial: . . .
   (2) failed to pay either the registration fee or the payment to the fund required by this chapter. . . .
   Mass. Gen. Laws Ch. 142A, § 12.

6. Section 14.14 provides in pertinent part:
   The calculation of Actual Loss for determining payments from the Guaranty Fund shall be measured by the following methods:
   (1) Calculation When No Work is Performed. If the contractor, or subcontractor abandoned the contract without doing any work, the actual loss shall be the amount the homeowner paid to the contractor, or subcontractor under the terms of the contract.
   (2) Calculation When Some of the Work is Performed. If the contractor, or subcontractor partially and properly completed some of the work which was agreed to under the terms of the contract, the actual loss shall be totalled by adding the amount of the reasonable cost of completing the contract and, if necessary, repairing the contractor's, or subcontractor's defective performance, and by subtracting the part of the contract price that has not been paid by the owner. . .
   (3) Calculation When All of the Work is Performed, but Performed Incorrectly. If the contractor, or subcontractor fully but improperly completed work that was agreed to under the terms of the contract, the actual loss shall be the amount required to correct the improperly completed work.

### 2. Section 362 of the Bankruptcy Code

Section 362 of the Bankruptcy Code sets forth multiple grounds for relief from stay, namely, "cause, including lack of adequate protection of an interest in property of a party in interest," and, with respect to a stay of action against property, lack of equity in the property coupled with a determination that such property is unnecessary to an effective reorganization. *See* 11 U.S.C. § 362(d). According to the United States Court of Appeals for the First Circuit "[t]hat the statute sets forth certain grounds for relief and no others indicates Congress' intent that the issues decided by a bankruptcy court on a creditor's motion to lift the stay be limited to these matters." *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26,31 (1st Cir.1994). The First Circuit, in determining that an order granting relief from stay did not have preclusive effect on a trustee's preference counterclaim, stated that "the hearing on a motion for relief from stay is meant to be a summary proceeding." *Id.* (citing *Matter of Vitreous Steel Prds. Co.*, 911 F.2d 1223, 1232 (7th Cir.1990)). It held the following:

> As a matter of law, the only issue properly and necessarily before a bankruptcy court during relief from stay proceedings is whether the movant creditor has a colorable claim; thus, a decision to lift the stay is not an adjudication of the validity or avoidability of the claim, but only a determination that the creditor' claim is sufficiently plausible to allow its prosecution elsewhere."

*Grella*, 42 F.3d at 34.

■ With respect to relief from the automatic stay under § 362(d)(1) of the Bankruptcy Code, numerous courts have observed that "cause" is not defined. According to the Ninth Circuit, cause "has no clear definition and is determined on a case-by-case basis. Where a bankruptcy court may abstain from deciding issues in favor of an imminent state court trial involving the same issues, cause may exist for lifting the stay as to the state court trial." *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir.1990)(citing *In re Castlerock Properties*, 781 F.2d 159, 163 (9th Cir.1986)).

■ In *In re Fernstrom Storage and Van Co.*, 938 F.2d 731 (7th Cir.1991), the court observed that " '[s]uspension of [the automatic stay] may be consonant with the purposes of the Bankruptcy Act when equitable considerations weigh heavily in favor of the creditor and the debtor bears some responsibility for creating the problems.' " *Id.* at 735. The Seventh Circuit cited with approval the decision in *Football Weekly*, stating "[a]n influential district court opinion adopts a three factor test for determining whether 'cause' exists...." *Id.* at 735. In *Football Weekly*, the court set forth the following test:

> The test to determine whether an automatic stay should be lifted to allow continuation of a pending lawsuit is whether
>
> a) Any "great prejudice" to either the bankrupt estate or the debtor will result from continuation of a civil suit,
>
> b) the hardship to the [non-bankrupt party] by maintenance of the stay considerably outweighs the hardship of the debtor, and
>
> c) the creditor has a probability of prevailing on the merits of his case.

*Id.* at 826 (citing *In re Bock Laundry Machine Co.*, 37 B.R. 564, 566 (Bankr. N.D.Oh.1984); and *Matter of McGraw*, 18 B.R. 140 (Bankr.W.D.Wis.1982)).

This Court finds that the three-part test articulated by the courts in *Fernstrom*

Mass.Code tit. 201, § 14.14.

*Storage* and *Football Weekly* provides useful guidance. Accordingly, the Court shall utilize that test. For the reasons set forth below, the Court finds that Claes has a plausible claim and has satisfied the three-part test for establishing "cause."

### B. *Analysis*

■ The Debtor, in his Opposition to Claes's Motion, raises issues under 11 U.S.C. § 523(a)(7) and 525 of the Bankruptcy Code. The Court finds that under the First Circuit's decision in *Grella* these issues are not ripe for adjudication in the context of deciding the Motion. Consideration of the ramifications of the Bankruptcy Code sections, however, is helpful in weighing the equities applicable to whether Claes has met her burden under § 362(d)(1).

The Court notes at the outset that the Massachusetts legislature contemplated the availability of bankruptcy to contractors when it authorized the Guaranty Fund and provided that, upon payment from the Fund to an owner who satisfies the requirements of Mass. Gen. Laws Ch. 142A, § 3, the Fund Administrator would be "subrogated to all the rights of the claimant up to the amount paid," and that "the fund shall be deemed a creditor with respect to any amount paid from the fund for the purpose of excepting to any discharge of the registered contractor ... under federal bankruptcy law." *Id.* at § 8.

At present, Claes's claim against the Debtor has not been liquidated. She seeks relief from stay to proceed with her action in state court. The Debtor objects arguing that the costs of defending the suit defeat his fresh start and raising issues that his license may be suspended or not renewed if he fails to pay any amounts paid from the Fund to Claes and that the Administrator may seek to except amounts paid from discharge under § 523(a)(7).

In weighing the prejudice to the Debtor and to Claes under the first prong of the *Football Weekly* test, the regulations governing the Guaranty Fund contemplate that Claes need not continue her state court action if she can establish that the Debtor's debts have been discharged, that his bankruptcy case has been closed, and that she is precluded by the Bankruptcy Court from pursuing a judgment against the Debtor, as well as by providing proof of a valid cause of action, evidence that the claim was presented within two years and six months of the date of the contract and proof of actual loss. *See* Mass.Code tit. 201, § 14.21, § (14). If Claes can satisfy the requirements of § 14.21(14), the Debtor's defense costs would be substantially reduced. Alternatively, were the Debtor to seek a judgment, the Debtor would have the option of defaulting and merely contesting Claes's damages, thus limiting his involvement to the amount of her actual loss.

■ With respect to the Debtor's arguments that he may be exposed to a suit under § 523(a)(7), the Court observes that the Administrator is subrogated to Claes's claim to the extent of the amount paid from the Fund. In other words, the Administrator's claim is derivative of Claes's claim and is not a new or independent claim. Indeed, the statute expressly provides that Claes would be required to assign all her right, title, and interest in her claim up to the amount paid by the Administrator. Under these circumstances, the Administrator would be subrogated to a claim against the Debtor that has been discharged in his Chapter 7 bankruptcy case and is not a fine or penalty within the meaning of § 523(a)(7) of the Bankruptcy Code. Moreover, as the Court observed in *Patriot Portfolio, LLC v. Weinstein (In re Weinstein)*, 164 F.3d 677 (1st Cir.1999), "Congress has plenary power to

enact uniform federal bankruptcy laws. *See* U.S. Const. art. 1, § 8, cl. 4; *International Shoe Co. v. Pinkus*, 278 U.S. 261, 265, 49 S.Ct. 108, 110, 73 L.Ed. 318 (1929). Consequently, '[s]tates may not pass or enforce laws to interfere with or complement the Bankruptcy Act or to provide additional or auxiliary regulations.' " 164 F.3d at 682–83 (citing *International Shoe Co.*, 278 U.S. at 265, 49 S.Ct. at 110, wherein the Supreme Court noted that the intent of Congress in establishing uniform bankruptcy laws necessarily excludes inconsistent state regulation). Thus, the Bankruptcy Code, not the state statute is determinative with respect to defining debts which are excepted to discharge under 11 U.S.C. § 523(a). Although this issue is not before the Court, for purposes of assessing prejudice to the Debtor, the Court finds that the Administrator would have great difficulty establishing that the assigned claim fell within the parameters of § 523(a)(7). Moreover, were the Administrator or Attorney General to refuse to renew the Debtor's license for failure to reimburse the fund, the Debtor would be free to litigate issues under 11 U.S.C. § 525 in this court or a state court.[7]

The Court finds that weighing the prejudice to Claes and the Debtor, Claes has established that there would be far greater prejudice to her than to the Debtor. Because there is little likelihood of any dividend to creditors of this estate, Claes's only hope of recovery, one not available to the Debtor's other creditors, is to attempt to obtain monies up to $10,000 from the Guaranty Fund.

In this regard, the Court also finds that Claes also has established a greater hardship to herself than to the Debtor. While the Debtor can elect to default in any state court action as Claes's claim has been discharged and she can not attempt to collect any judgment against him, Claes's can only recover from the Guaranty Fund. The hardship to her if she is precluded from that option outweighs any hardship to the Debtor.

Finally, the Court must find that Claes has a probability of prevailing on the merits. The Court so finds. As noted earlier in this decision, the Debtor failed to comply with MLBR 4001–1 and did not deny that Claes was injured by the alleged breach of contract. The Court finds that Claes has a probability of obtaining monies from the Guaranty Fund and that the Debtor's concerns about the ramifications of § 523(a)(7) and § 525 of the Bankruptcy Code do not warrant denial of the relief requested.

## V. CONCLUSION

In view of the holding in *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26 (1st Cir.1994), and the existing record, the Court hereby grants Claes's Motion.

### ORDER

In accordance with the Memorandum dated May 18, 2004, the Court hereby grants the Motion of Frieda Claes for Relief from the Automatic Stay and overrules

---

7. Section 525 of the Bankruptcy Code provides in pertinent part the following:
   [A] governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against ... a person that has been a debtor under this title ... solely because such ... debtor is or has been a debtor under this title ... has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in a case under this title...

11 U.S.C. § 525.