883 F.2d 970
 58 USLW 2189, 19 Bankr.Ct.Dec. 1364,
Bankr. L. Rep. P 73,078
 In re JET FLORIDA SYSTEMS, INC. f/k/a Air Florida System,
Inc. and Airport Systems, Inc., f/k/a Air Florida,
Inc., Debtors.
Tracy OWASKI, Plaintiff-Appellee,
v.
JET FLORIDA SYSTEMS, INC., f/k/a Air Florida System, Inc.
and Airport Systems, Inc., f/k/a Air Florida,
Inc., Defendants-Appellants,
Phoenix Ventures, Inc., as successor by merger to the
reorganized debtors, Appellants.
 No. 88-6033.
 United States Court of Appeals,
Eleventh Circuit.
 Sept. 15, 1989.
 
 Gerard M. Kouri, Jr., Miami, Fla., Thomas C. Woods, Miami, Fla., for Jet Florida Systems, Inc.
 John K. Olson, Stearns, Weaver, Millier, Weissler, Alhadeff & Sitterson, P.A., Tampa, Fla., for Phoenix Ventures, Inc.
 Wilson E. Hodge, Homestead, Fla., for Tracy Owaski.
 Appeal from the United States District Court for the Southern District of Florida.
 Before ANDERSON and COX, Circuit Judges, and BUTLER*, District Judge.
 PER CURIAM:
 
 
 1
 The judgment of the district court is AFFIRMED on the basis of and for the reasons stated in the well-reasoned opinion rendered in this case in the district court by Judge Stanley Marcus. A copy of that opinion is appended hereto.
 
 APPENDIX
 
 2
 In Re Jet Florida System, Inc., f/k/a Air Florida System, Inc.
 
 
 3
 and
 
 
 4
 In Re Airport Systems, Inc., f/k/a Air Florida, Inc., Debtors
 
 
 5
 Tracy Owaski, Appellant,
 
 
 6
 v.
 
 
 7
 Jet Florida System, Inc., f/k/a Air Florida System, Inc. and
 
 
 8
 Airport Systems, Inc., f/k/a Air Florida, Inc., Appellees.
 
 United States District Court
 Southern District of Florida
 Case No. 88-152-CIV-MARCUS
 
 9
 Filed Sept. 27, 1988.
 
 ORDER OF REMAND
 
 10
 THIS CAUSE is before the Court upon the appeal of Appellant Tracy Owaski from a bankruptcy court order denying his motion to vacate the permanent injunction established by 11 U.S.C. section 524 in the above-styled bankruptcy. The Appellant brought a defamation suit against the Debtor two years prior to the Debtor having petitioned for bankruptcy. Appellant moved to vacate the injunction of Sec. 524 in order to seek a judgment of liability against the Debtor so that he may proceed against the Debtor's liability insurer. For the reasons set forth below, we reverse the bankruptcy court's determination and remand for further proceedings consistent with this Order.
 
 I. HISTORICAL BACKGROUND OF THE CASE
 
 11
 Appellant Tracy Owaski was employed by Appellees Jet Florida System, Inc., f/k/a Air Florida Systems, Inc. and Airport Systems, Inc., f/k/a Air Florida, Inc. (collectively "Air Florida") as an aircraft mechanic. On or about November 30, 1981, Air Florida terminated Mr. Owaski for his purported involvement in the mechanical sabotage of an Air Florida aircraft. In December 1981, Appellant commenced an action against Air Florida in the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida, alleging defamation and challenging the constitutionality of the federal Railway Labor Act. 45 U.S.C. Secs. 151-188. According to the complaint, Appellant Owaski was defamed by Air Florida's notice of termination.
 
 
 12
 In November 1983, Air Florida removed the matter to the United States District Court for the Southern District of Florida. The removal was based upon Owaski's challenge to the constitutionality of the Railway Labor Act. Jet Florida filed a petition for voluntary bankruptcy pursuant to Chapter 11 of the Bankruptcy Code on July 3, 1984. On July 31, 1984, upon sua sponte review of the matter, the Honorable Sidney M. Aronovitz, United States District Judge, entered an Order staying all proceedings in Owaski's case.
 
 
 13
 Air Florida's reorganization subsequently commenced. The bankruptcy court set November 30, 1984 as the bar date for filing proofs of claims. While Appellant Owaski filed a proof of claim with respect to unpaid wages and benefits, he filed no proof of claim pertaining to his defamation action. On August 7, 1986, the bankruptcy court approved Air Florida's amended consolidated reorganization plan. The bankruptcy court then issued a permanent injunction pursuant to 11 U.S.C. section 524(a).
 
 
 14
 On June 29, 1987, Owaski moved the district court to vacate the section 524(a) permanent injunction entered by the bankruptcy court. Judge Aronovitz denied Owaski's motion on the grounds that he lacked jurisdiction over the matter because the injunction had been entered by the bankruptcy court. Owaski v. Air Florida, Inc., No. 83-2882-CIV-SMA (S.D.Fla. Oct. 22, 1987). In the same Order, Judge Aronovitz dismissed Owaski's defamation claim without prejudice to proceed in the bankruptcy court.
 
 
 15
 Owaski moved to vacate the section 524(a) injunction on November 20, 1984 in the bankruptcy court. He sought to proceed with his defamation claim in either state or federal court. The bankruptcy court denied Owaski's motion on the ground that a discharge under 11 U.S.C. Sec. 1141 operated to bar any claim asserted by Owaski. In re Jet Florida Systems, Inc., No. 84-01223-BKC-SMW (Bankr.S.D.Fla. Dec. 15, 1987). Appellant Owaski subsequently filed this appeal.
 
 II. BANKRUPTCY INJUNCTION
 A. Section 524(a) Injunction
 
 16
 Title 11, United States Code, section 524(a) operates as an injunction against actions against a debtor subsequent to a discharge of debt. Section 524(a) provides:
 
 
 17
 A discharge in a case under this title--
 
 
 18
 (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, or 1328 of this title, whether or not discharge of such debt is waived;
 
 
 19
 (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, to collect, recover or offset any such debt as a personal liability of the debtor, or from property of the debtor, whether or not discharge of such debt is waived; and
 
 
 20
 (3) operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, except a community claim that is excepted from discharge under section 523 or 1328(c)(1) of this title, or that would be so excepted, determined in accordance with the provisions of section 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived.
 
 
 21
 11 U.S.C. Sec. 524(a). A bankruptcy discharge and the concommitant injunction against subsequent actions are designed to give the debtor a financial "fresh start." Jackson, The Fresh-Start Policy in Bankruptcy Law, 98 Harv.L.Rev. 1393, 1396-97 (1985). Thus, with the injunction, a discharge in bankruptcy may be more effective in preventing "abuse by harassing creditors." H.R.Rep. No. 1502, 91st Cong., 2d Sess. at 1-2 (1970) [, U.S.Code Cong. & Admin.News 1970, p. 4156].
 
 
 22
 Generally, in order for a creditor to retain its claim against the bankrupt, the creditor must file a notice of claim during the bankruptcy proceedings. When no such notice is filed, the creditor often waives any right against the bankrupt to which it may have been entitled. See Litton Systems, Inc. v. Frigitemp Corp. (In re Frigitemp Corp.), 8 B.R. 284, 287-88 (S.D.N.Y.1981). In such a case, the section 524(a) injunction will act to shield the debtor from such creditors.
 
 
 23
 The section 524(a) injunction was designed primarily to protect the debtor and the bankruptcy estate. However, a discharge will not act to enjoin a creditor from taking action against another who also might be liable to the creditor.
 
 
 24
 Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.
 
 
 25
 11 U.S.C. Sec. 524(e). For example, a surety, who is secondarily liable to the obligee, is not shielded by the obligor's bankruptcy or section 524 injunction. See Bowers v. American Surety Co., 30 F.2d 244 (2d Cir.), cert. denied, 279 U.S. 865 [, 49 S.Ct. 480, 73 L.Ed. 1003] (1929); see also Underhill v. Royal, 769 F.2d 1426, 1432 (9th Cir.1985).
 
 B. Obligation of an Insurer
 
 26
 In the case at bar, Appellant Owaski concedes that he may not proceed against the assets of the bankruptcy estate. However, Owaski maintains that he may proceed against the debtor to establish the debtor's liability in order to recover from the debtor's insurer.
 
 
 27
 To determine whether Owaski should be permitted to proceed with his defamation claim, we begin with an examination of section 524 of the Bankruptcy Code. Section 524(a) explicitly renders judgments void only for "the personal liability of the debtor." 11 U.S.C. Sec. 524(a). Accordingly, the statutory language, on its face, does not preclude the determination of the debtor's liability upon which the damages would be owed by another party, such as the debtor's liability insurer.
 
 
 28
 Moreover, section 524(e) permits a creditor to seek recovery from "any other entity" who may be liable on behalf of the debtor. 11 U.S.C. Sec. 524(e). In discussing the scope of section 524(a) and (e), Collier's makes this observation:
 
 
 29
 the provisions of 524(a) apply only with respect to the personal liability of the debtor. When it is necessary to commence or continue a suit against a debtor in order, for example, to establish liability of another, perhaps a surety, such suit would not be barred. Section 524(e) was intended for the benefit of the debtor but was not meant to affect the liability of third parties or to prevent establishing such liability through whatever means required.
 
 
 30
 3 R. Babitt, A. Herzog, R. Mabey, H. Novikoff, & M. Sheinfeld, Collier on Bankruptcy p 524.01 at 524-16 (15th ed.1987) (emphasis added). Certainly, the obligation of an insurer can be viewed as such a secondary liability under the provisions of section 524(e).
 
 
 31
 Despite statutory language that would suggest otherwise, Appellee Jet Florida contends that because Owaski failed to file any notice of claim in the earlier bankruptcy proceedings, he may not proceed with his defamation action. In support of this position, Jet Florida relies exclusively on Citibank, N.A. v. White Motor Corp. (In re White Motor Credit), 761 F.2d 270 (6th Cir.1985). In White Motor, the Sixth Circuit had before it an issue similar to the one before this Court. There, 160 individual tort plaintiffs sought to litigate for judgment against the debtor and then to collect the judgment from the debtor's insurers. Id. at 274. The court in White Motor held that all pre-petition and post-petition claims that had not been filed with the bankruptcy court were barred. Id. at 274-75.
 
 
 32
 We are not prepared to follow the conclusion reached in White Motor regarding the preclusive effect of section 524. Although the Sixth Circuit thoroughly canvassed the abstention issues under the Bankruptcy Code, its decision provides only a brief discussion as to the scope and meaning of section 524. The one paragraph discussion in White Motor regarding this issue first states that the district court's order allowed personal injury claims to continue, and then offers the naked conclusion that the claims were barred if they had not been filed in time. Id. at 274-75. The brief treatment given to the issue may have stemmed from confusion over the district court's order. The Sixth Circuit candidly admitted that they were "unable to determine precisely what the District Court had held on this issue." Id. at 274 n. 3. White Motor provided no commentary regarding the statutory language of section 524, nor did it offer any rationale of any kind for its holding. Moreover, the conclusion stated in White Motor regarding the preclusive effect of section 524 contravenes the holdings and rationale of a line of cases, which this Court will discuss below, involving the continuation of tort actions against a debtor for the purpose of establishing insurer liability.
 
 
 33
 We believe that the plain language of section 524, as well as an examination of a relevant line of cases, compel us to reject the application of White Motor to the facts and circumstances of this case. To begin, in the case of Wimmer v. Mann (In re Mann), 58 B.R. 953, 956 (Bankr.W.D.Va.1986), the court determined that the intent of the section 524(a) injunction is to prohibit the collecting of a debt as a personal liability of the debtor. Id. at 958. There, as here, the plaintiff had not filed a claim prior to the debtor's discharge of debt. However, the court reasoned that the goals of section 524(a) would not be advanced by preventing a plaintiff from maintaining an action against the debtor in order to establish the debtor's liability when that was a prerequisite to recovery from the insurer. Id. at 958; see also Rowe v. Ford Motor Co., 34 B.R. 680 (M.D.Ala.1983); Elliot [Elliott] v. Hardison, 25 B.R. 305 (E.D.Va.1982); Wilkinson v. Vigilant Insurance Co., [236 Ga. 456,] 224 S.E.2d 167 (1976); Johnson v. Bondurant, [187 Kan. 637,] 359 P.2d 861 (1961); Miller v. Collins, [328 Mo. 313,] 40 S.W.2d 1062 (1931).
 
 
 34
 According to Mann, when an insurer is liable for the debtor's torts, this liability is " 'personal' within the meaning of section 524(a)(2) only to the extent necessary to sustain recovery against the insurer, not the debtor-insured." Id. at 957. See also In re Honosky, 6 B.R. 667, 670 [Bkrtcy.] (S.D.W.Va.1980). The debtor is not prejudiced by exposure to the liability claim because "[t]he Debtor and his property are not subject to any risk and maintenance of the suit does not frustrate the policy of the Bankruptcy Code in giving the Debtor a fresh start in his economic life." In re Mann, 58 B.R. at 958. The Mann court concluded that the pending tort action could proceed in order to permit the plaintiff in that action to effect recovery against the insurance company.
 
 
 35
 The Mann decision is far from alone in enabling tort claims to continue against a debtor for the purpose of insurance recovery. The district court in Montana in reviewing a case similar to Mann concluded that:
 
 
 36
 The judgment of the state court was, as a matter of law, null and void as to [the debtor], and the order of discharge of June 7, 1977, and the subsequent order of September 23, 1977, were correct in declaring and in enjoining any action under it as to [the debtor]. If, however, as a matter of state law, the judgment in the state court has the effect of establishing some fact or fixing some liability as to the insurance company, the state courts are free to give that judgment its proper effect to [sic] long as they do not in any way involve [the debtor] in what is done.
 
 
 37
 In re Bracy, 449 F.Supp. 70, 71 (D.Mont.1978).
 
 
 38
 In yet another case similar to Mann and the case at bar, the tort victim sought to modify the injunction of section 524 for the sole purpose of seeking a judgment not against the debtor, which was her former employer, but against the debtor's insurance company. In re McGraw, 18 B.R. 140 (Bankr.W.D.Wis.1982). The bankruptcy court concluded that since neither the debtor nor his property was in any jeopardy of personal liability, the injunction of section 524 could be modified and the suit could continue with the debtor as defendant for the limited purpose of determining liability. Id. at 143.
 
 
 39
 In West v. White (In re White), 73 B.R. 983 (Bankr.D.Col.1987), a plaintiff had filed a lawsuit for personal injuries against defendant who had filed for bankruptcy and did not file a claim before the defendant-debtor's discharge. The defendant-debtor argued that the section 524 injunction barred plaintiff from continuing her claim. Id. at 984. The bankruptcy court, relying upon section 524(e), disagreed "to the extent that that lawsuit will affect only the assets and liability of the debtor's insurer, and not the debtor personally." Id. at 985. See also In re Honosky, 6 B.R. 667 (Bankr.S.D.W.Va.1980) (Plaintiff could proceed to suit to extent of the debtor's insurance coverage); Elliott v. Hardison, 25 B.R. 305-06 (E.D.Va.1982) (relief from stay appropriate given that any resulting judgment from the civil action could not be enforced against the debtor or his bankruptcy estate); In re Glen-Bern Industries, Inc., 6 C.B.C. 100, 102 (Bankr.D.Mass.1975) (although decided under Sec. 16 Bankruptcy Act of 1898, the court reasoned that a discharge is personal to the debtor and not to accrue to the benefit of third parties who may have liability based on the bankrupt's liability); Rowe v. Ford Motor Co., 34 B.R. 680 (M.D.Ala.1983).
 
 
 40
 Appellees have asserted that many of the cases cited above--particularly those involving uninsured motorists--are distinguishable from the case at bar because those cases involved a plaintiff seeking to determine liability of the debtor in order to recover under their own insurance policies and not the insurance policies of the debtors. We are unpersuaded by Appellee's attempt at distinguishing the cases. The analysis provided by the available case law does not hinge upon whose insurer is liable, but rather upon the condition that the debtor not be personally liable in a way that would interfere with the debtor's fresh start in economic life. The mere fact that it would be the Appellee's insurer who is potentially liable for the defamation tort is of no consequence for determining the preclusive effect of section 524. In addition, Appellees ignore two cases. In In re McGraw, 18 B.R. 140 (Bankr.W.D.Wis.1982), the plaintiff in a negligence suit was permitted to seek recovery from her employer's liability insurer. In In re White, 73 B.R. 983 (Bankr.D.Col.1987), the plaintiff was permitted to proceed against a debtor to seek recovery from the defendant's liability insurer.
 
 
 41
 Appellees also maintain that Appellee's insurer will be prejudiced by the continuation of Appellant's defamation suit. The reported cases, however, underscore that the purpose of section 524 of the Bankruptcy Code is to protect the debtor and not to shield third parties such as insurers who may be liable on behalf of the debtor.[1] The cases we have cited take into account that an insurer may be liable if the plaintiff prevails in the continuing tort action. Therefore, the insurer is not considered to be "prejudiced" under section 524 when the permanent injunction is modified to permit a pending action to continue for the purpose of seeking recovery from the debtor's insurer, because the insurer's obligation remains commensurate with the underlying insurance contract. The "fresh-start" policy is not intended to provide a method by which an insurer can escape its obligations based simply on the financial misfortunes of the insured.
 
 
 42
 Far from holding that insurers should be protected from liability, one "court reasoned that the insurance company should not be entitled to gain a benefit that was not intended or in any way computed within the rate charged for its policy." In re Mann, 58 B.R. 953, 957 (Bankr.W.D.Va.1986) (citing In re Glen-Bern Industries, Inc., 6 C.B.C. 100, 103 (Bankr.D.Mass.1975)). See also Johnson v. Bondurant, 187 Kan. 637, 359 P.2d 861 (1961) (liability of an insurer is not altered by the discharge of a bankrupt). The Mann court wrote that "[w]ere we to not permit the state court action to proceed, the insurance company would in effect escape potential liability and be unjustly enriched." In re Mann, 58 B.R. at 958. Even under section 16 of the former Bankruptcy Act which had more limited language than section 524(e), the court held in In re Bracy, 449 F.Supp. 70, 71 (D.Mont.1978), that:
 
 
 43
 if an insurance company is as a matter of state law liable to a plaintiff in a personal injury action, subsequent discharge of the assured in bankruptcy does not alter the obligation of the insurance company. It seems clear that it is the policy of the law to discharge the bankrupt but not to release from liability those who are liable with him.
 
 
 44
 The same result must follow under the broader language of Section 524(e). In re White, 73 B.R. 983, 985 (Bankr.D.Col.1987)
 
 
 45
 We are, however, concerned by the prospect that reversing the decision of the bankruptcy court in this case would frustrate the fresh-start policy embodied in the Code in one way--by requiring the bankrupt to spend sums in defending this lawsuit. We are cognizant that in actions such as these, the cost of litigation can sometimes surpass the actual amount of liability. Therefore, to allow suits of this nature to go forward could possibly have the effect of draining funds that would more properly be used in the revitalization of the reorganized corporation.
 
 
 46
 Nonetheless, this consideration alone does not require us to affirm the court below for two main reasons. First, we can determine no effective means of determining at this stage whether the bankrupt or the insurance company will pay the cost of the litigation. To have our ruling premised on that determination would provide an incentive for the debtor to claim to assume that burden. If that simple fact barred the plaintiff from going forward on his claim, there would exist no adversarial relationship between the bankrupt and insurer so that we could actually resolve this crucial question, because both of those parties would have an obvious interest in demonstrating that the debtor was liable for litigation costs.
 
 
 47
 Second, the practical and economic realities compel the insurance company to defend the underlying action. See Matter of Holtkamp, 669 F.2d 505, 508-09 (7th Cir.1982); In re White, 73 B.R. at 985. The insurance company may be responsible pursuant to a contract with the bankrupt, in which case it is in their direct interest to defend the action. On the other hand, if there is a dispute between the bankrupt and the insurer as to the applicability of coverage, it remains in the interest of the insurer to defend the suit. In a situation such as the one at bar, the debtor would be free to default because the Plaintiff cannot recover directly from the bankrupt estate. In that scenario, we recognize that the insurance company would be compelled to litigate its responsibility under the insurance contract in order to avoid payment. It seems clear that the relationship between the parties in this action--Plaintiff, bankrupt, and insurer--virtually requires that Air Florida will be represented in the defamation action with no cost to it. In short, we find that the possibility that the debtor will be responsible to pay any amount associated with defending this action is so remote that the fresh-start policy is simply not defeated.
 
 III. CONCLUSION
 
 48
 We find that section 524(a) prohibits a plaintiff from proceeding against a debtor who has received a discharge of debt in order to recover from the bankruptcy estate. However, pursuant to section 524(e), a plaintiff may proceed against the debtor simply in order to establish liability as a prerequisite to recover from another, an insurer, who may be liable. Accordingly, it is hereby
 
 
 49
 ORDERED AND ADJUDGED that the order of the bankruptcy court denying Appellants motion for relief from the permanent injunction is REVERSED and this cause is REMANDED for further proceedings consistent with this Order.
 
 
 50
 DONE AND ORDERED in Miami, Florida this 21st day of September, 1988.
 
 
 51
 (s) Stanley Marcus
 
 STANLEY MARCUS
 UNITED STATES DISTRICT JUDGE
 SOUTHERN DISTRICT OF FLORIDA
 
 
 *
 Honorable Charles R. Butler, U.S. District Judge for the Southern District of Alabama, sitting by designation
 
 
 [1]
 One court noted the following in determining the liability of an insurance company for bankruptcy purposes:
 It is unnecessary to determine specifically that the insurer is a co-debtor, or a guarantor, or in any manner a surety for the assured, but it is clear that the insurer falls within one of these classifications.... Consequently the liability of the [insurer] is not altered by the discharge of the bankrupt.
 Wilkinson v. Vigilant Insurance Co., [236 Ga. 456,] 224 S.E.2d 167, 168 (1976) (quoting Miller, 40 S.W.2d at 1065) (referring to predecessor to Sec. 524(e), which was not as broad as Sec. 524(e). West v. White (In re White), 73 B.R. 983, 985 (Bankr.D.Col.1987)).