**In the Matter of Gladys E. SHONDEL, Debtor–Appellant.**

**No. 90–3786.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 13, 1991.

Decided Dec. 18, 1991.

*Twin Disc,* 772 F.2d at 1333.

R. Glen Wright, Findlay, Ill., John C. Sciaccotta, Jill A. Dougherty (argued), James M. Rogan, Kelly, Olson, Pusch, Rogan & Siepker, Chicago, Ill., for appellee.

James E. Peckert (argued), Charles C. Hughes, Kehart, Shafter, Hughes & Webber, Alan D. Bourey, Decatur, Ill., for debtor-appellant.

Before CUDAHY and EASTERBROOK, Circuit Judges, and MOODY, District Judge.[*]

* The Hon. James T. Moody, District Judge of the United States District Court for the Northern District of Indiana, sitting by designation.

CUDAHY, Circuit Judge.

In this case we are asked to determine whether a bankruptcy case may be reopened and the permanent injunction under 11 U.S.C. § 524 modified to permit recovery from the debtor's insurer. The issue is complicated here by two problems. First, though the debtor failed to list her insurance policy on her bankruptcy schedules, the creditor was aware of the insurance throughout the bankruptcy proceedings. And second, the state court in which the creditor seeks recovery previously dismissed the creditor's suit with prejudice on the ground that the section 524 injunction precludes judgment against the debtor. The district court affirmed the bankruptcy court's decision to reopen the case and modify the injunction, and we affirm.

I.

The relevant facts are not disputed. On July 19, 1985, Gladys Elaine Shondel was involved in an automobile accident which resulted in the death of Jimmie D. Craft. Mary Ellen Craft (the widow) was appointed executor of Jimmie Craft's estate, and on August 15 she filed a wrongful death action against Shondel in the Circuit Court of Macon County, Illinois. On March 14, 1986, Shondel filed a voluntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 701–766, listing Craft as a creditor. Shondel possessed automobile liability insurance, but did not list the policy as an asset of the estate. Throughout the bankruptcy proceedings, however, Craft, through her attorney, had knowledge of Shondel's insurance. Shondel received her discharge on July 9, 1986, and on August 12 she moved in state court to dismiss the wrongful death action. On January 7, 1987, the state court dismissed that action with prejudice on the basis of Shondel's discharge.

On May 13, 1988, Craft moved the bankruptcy court to reopen the bankruptcy case and lift the automatic stay to allow her to proceed against Shondel in state court to

the extent of Shondel's insurance coverage. On December 15, the former Trustee also moved the bankruptcy court to reopen the case to allow him to administer an undisclosed asset (the insurance policy). On October 26, 1989, the bankruptcy court reopened the case and modified the permanent injunction to allow Craft to proceed in state court on her wrongful death claim. However, the court also enjoined Craft from collecting any judgment in the action from Shondel, Shondel's property or property of the estate. Shondel then appealed to the district court, which affirmed. The lower courts reasoned that a bankruptcy discharge does not prohibit a determination of the debtor's liability for the purpose of seeking recovery from the debtor's insurer. They concluded further that the bankruptcy court could, within its discretion, reopen the case and modify the permanent injunction issued pursuant to 11 U.S.C. § 524.

## II.

### A. *Reopening of the Bankruptcy Case*

■ Shondel's first argument on appeal is that the lower courts erred in deciding that the bankruptcy case could be reopened. Section 350(b) of the Bankruptcy Code provides: "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). The courts below identified three factors as providing "other cause" sufficient to justify reopening the bankruptcy case: the neglect of Craft's counsel during the bankruptcy proceedings; the fact that Shondel's insurance was not listed as an asset; and the conduct of Shondel's counsel in convincing the state court to adopt an erroneous position with respect to the effect of a discharge. Shondel argues that none of these factors constitutes "other cause" under section 350(b).

■ The Bankruptcy Code does not define "other cause." A decision to reopen a case for "other cause" lies within the discretion of the bankruptcy court and will be reversed only for an abuse of that discretion. *See, e.g., Hawkins v. Landmark Finance Co.*, 727 F.2d 324, 326 (4th Cir.1984);

*In re Thomas*, 204 F.2d 788, 791 (7th Cir. 1953). In exercising its discretion to reopen a case, "the bankruptcy court should exercise its equitable powers with respect to substance and not technical considerations that will prevent substantial justice." *In re Stark*, 717 F.2d 322, 323 (7th Cir. 1983) (per curiam). The trend in reopening cases under section 350(b) has thus been "to allow the bankruptcy judge broad discretion to weigh the equitable factors in each case." Michael P. Saber, *Section 350(b): The Law of Reopening*, 5 Bankr. Dev.J. 63, 82 (1987) (collecting cases).

We believe that the bankruptcy court had sufficient cause to reopen Shondel's case in order to modify the permanent injunction. Initially we note that equitable considerations weigh heavily in favor of Craft. Such considerations led this Court in *Stark* to favor a broad policy of reopening: there we held that a debtor may reopen a case to add an omitted creditor where there is no evidence of fraud or intentional design and where the creditor is not harmed. 717 F.2d at 324. We think that a case may be reopened under analogous circumstances where a *creditor* seeks recovery from a previously undisclosed asset of the debtor. Here there is no evidence of fraud or intentional design on the part of Craft. Moreover, since the modified injunction prohibits any recovery from Shondel personally, she is not harmed or seriously prejudiced by the reopening. As this Court has recently concluded, "[D]ebtors-defendants suffer little prejudice when they are sued by plaintiffs who seek nothing more than declarations of liability that can serve as a predicate for a recovery against insurers, sureties, or guarantors." *In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 736 (7th Cir.1991); *accord In re Holtkamp*, 669 F.2d 505, 508–09 (7th Cir. 1982). Thus in *Fernstrom Storage* this Court found the requisite "cause" to grant relief from the automatic stay under section 362(a) where the creditor sought to sue the debtor solely to obtain recovery from the debtor's insurer. Although it involved a different provision of the Bankruptcy Code, the analogous posture of the case

and the similar "cause" requirement make its reasoning persuasive here.

■ With these equitable principles in mind, we turn to the specific factors relied on by the courts below in finding cause to reopen the case. First, the lower courts pointed to the neglect of Craft's original counsel in failing to take the appropriate action in the bankruptcy court to protect his client's rights.[1] Craft's counsel did fail to follow the usual procedure for recovering from an insurer in a case such as this one, which is to move the bankruptcy court to lift the automatic stay and allow the state court suit to proceed. *See, e.g., Fernstrom Storage*, 938 F.2d at 735; *Holtkamp*, 669 F.2d at 507. Here, the automatic stay of section 362 had been replaced by the permanent injunction under section 524 when Shondel received her discharge. In addition, Craft's attorney failed to persuade the state court that a discharge in bankruptcy does not discharge the obligations of a debtor's insurer under an insurance policy. Shondel argues that counsel's neglect cannot constitute "cause" under section 350(b). She cites *Powell v. Starwalt*, 866 F.2d 964 (7th Cir.1989), which held that an attorney's neglect cannot be "good cause" under Federal Rule of Civil Procedure 4(j) (requiring dismissal for failure to serve summons and complaint within 120 days). We do not think that a showing of "good cause" under Rule 4(j) should be equated with a bankruptcy court's discretion to reopen a case for "other cause" under section 350(b).[2] In contrast to a court's ruling on a Federal Rule, a bankruptcy court exercises equitable powers and, as noted, should emphasize "substance and not technical considerations that will prevent substantial justice." *Stark*, 717 F.2d at 323. Therefore, while

counsel neglect or mistake may not be "good cause" for purposes of Rule 4(j), it may be a factor in the finding of "other cause" in the context of a bankruptcy reopening.[3]

■ The lower courts' second basis for reopening the case is Shondel's failure to list her liability insurance as an asset on her bankruptcy schedules. Shondel argues that this cannot be cause to reopen because Craft was aware of the insurance and therefore could not have been defrauded or harmed by its omission. The dominant view is that insurance policies that provide coverage for the debtor's liability are property of the debtor's estate. *See In re Titan Energy, Inc.*, 837 F.2d 325, 329 (8th Cir.1988); *Tringali v. Hathaway Mach. Co.*, 796 F.2d 553, 560 (1st Cir.1986); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir.), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); *In re Minoco Group of Companies, Inc.*, 799 F.2d 517, 519 (9th Cir.1986). As such, they generally should be listed on the debtor's schedule of assets under 11 U.S.C. § 521(1). As the bankruptcy court noted, however, it is not current practice for debtors to list each insurance policy as an asset in every case. Bankr.Ct.Op. at 5 (Oct. 26, 1989). We nonetheless agree with the lower courts that, at least where a debtor schedules a liability claim and owns liability insurance to cover that claim, the liability insurance policy should be listed as an asset of the estate.

■ Shondel's failure to list her insurance policy prevented Craft from filing a proof of claim and prevented the Trustee from gaining control over the asset for administration purposes. While it is not clear whether either of these actions would

---

1. The district court ruled that this factor alone would not be sufficient to permit the reopening of the case. Dist.Ct.Order at 5 (Nov. 5, 1990).

2. The fact that the same attorney was involved here as in *Powell* does not, of course, make that case any more controlling or change its legal significance.

3. While some lower courts have held that bankruptcy cases cannot be reopened to relieve parties of their own mistake or ignorance, *see, e.g.,*

*Virgin Islands Bureau of Internal Revenue v. St. Croix Hotel Corp.,* 60 B.R. 412 (D.V.I.1986), *aff'd,* 867 F.2d 169 (3d Cir.1989), others have found certain cases of "excusable neglect" to warrant reopening, *see, e.g., In re Holloway,* 10 B.R. 744 (Bankr.D.R.I.1981). Because we rely on additional factors below, we do not decide whether counsel neglect, by itself, would be a sufficient basis for reopening under section 350(b).

have resulted directly in a recovery by Craft, it is certainly possible that they would have influenced the proceedings in other ways, for example, by altering the bankruptcy court's initial injunction under section 524, by affecting the state court's decision to dismiss the action or even by modifying the actions of the parties' attorneys. In any event, we do not believe that Craft must prove that she was actually prejudiced by the omission; it is sufficient that she was placed in a posture where prejudice was likely. Moreover, the former Trustee moved to reopen the case on the separate ground that an unadministered asset remained. The cases clearly hold that a case may be reopened where there is prima facie evidence that assets have not been fully administered, *In re Joslyn's Estate*, 171 F.2d 159, 164 (7th Cir.1948), or where additional assets are discovered, *Miller v. Shallowford Community Hosp., Inc.*, 767 F.2d 1556, 1559 (11th Cir.1985). The Trustee's motion and the presence of the unlisted insurance provide additional support for the bankruptcy court's exercise of discretion to reopen this case.

■ We turn finally to the lower courts' third factor supporting the reopening of the case, the conduct of Shondel's counsel in convincing the state court to adopt an erroneous position as to the effect of a discharge. As we explain below, we believe it to be reasonably clear that a discharge under section 524 does not prevent the establishment of liability for the purpose of recovering from an insurer. We also think that this was the law in 1986, when Shondel sought to have the case dismissed from the state court. Still, we do not believe that Shondel's counsel can fairly be charged with misconduct, for his argument appears to have been made in good faith, apparently in reliance upon some misleading language in *In re White Motor Credit*, 761 F.2d 270 (6th Cir.1985). We thus hesitate to assign substantial weight to this factor. Nonetheless, the actions of Shondel's counsel in persuading the state court to dismiss the action can properly be considered a factor in establishing cause to reopen the case, for two principal reasons. First, the equities in this case favor reopening, and this factor interrelates with the two factors discussed previously to strengthen the basis for reopening in the interest of "substantial justice." And second, the position that the state court was convinced to accept was actually an interpretation of the bankruptcy court's own injunction, *see infra* section II.C; since the bankruptcy court thus had a special interest in the integrity of its own judgment, it deserves some leeway in reopening a case under such circumstances. *See Grand Union Equip. Co. v. Lippner*, 167 F.2d 958, 960 (2d Cir.1948) (modification of bankruptcy injunction to permit recovery from insurer justified on the basis of "the prospective operation of an injunction and the continuing power of an equity court to change it when its enforcement in original form becomes inequitable").

### B. *Effect of the Discharge Injunction*

■ Shondel's second argument is that her bankruptcy discharge prohibits the determination of her liability to Craft, even if such determination is solely for the purpose of recovering from Shondel's insurer. The language and intent of the relevant provision as well as the controlling case law, however, lead to the opposite conclusion.

■ The effect of a discharge is governed by 11 U.S.C. § 524. Section 524(a) provides that a discharge "operates as an injunction against the commencement or continuation of an action ... to collect, recover or offset any such debt as a personal liability of the debtor...." On its face, the provision prevents suits and renders judgments void only with respect to the "personal liability" of the debtor; it does not preclude a determination of the debtor's liability on the basis of which indemnification would be owed by another party. Indeed, section 524(e) explicitly provides that a debtor's discharge "does not affect the liability of any other entity on, or the property of any other entity for, such debt." In explaining these provisions, *Collier* observes:

When it is necessary to commence or continue a suit against a debtor in order, for example, to establish liability of another, perhaps a surety, such suit would not be barred. Section 524(e) was intended for the benefit of the debtor but was not meant to affect the liability of third parties or to prevent establishing such liability through whatever means required.

3 Roy Babitt et al., *Collier on Bankruptcy* ¶ 524.01, at 524–16 (15th ed. 1991) (footnotes omitted).

The Eleventh Circuit's decision in *In re Jet Florida Systems, Inc.*, 883 F.2d 970 (11th Cir.1989), directly supports our conclusion that a discharge injunction under section 524 does not preclude the determination of a debtor's liability for the purpose of recovery from an insurer. In that case a defamation action against the debtor had been dismissed on the basis of the section 524 post-discharge injunction. After the bankruptcy court refused to vacate the injunction to allow recovery from the debtor's insurer, the district court reversed. After thoroughly reviewing the relevant cases and the background of section 524, the district court held that "a plaintiff may proceed against the debtor simply in order to establish liability as a prerequisite to recover from another, an insurer, who may be liable." *Id.* at 976. The Eleventh Circuit affirmed, and adopted the district court's opinion as its own.

The reasoning of this Court's recent decision in *In re Fernstrom Storage & Van Co.*, 938 F.2d 731 (7th Cir.1991), further supports the conclusion reached here. *Fernstrom Storage* held that neither the failure to file a proof of claim nor the automatic stay of section 362(a) precludes an action against a debtor to obtain recovery from the debtor's insurer. The court reasoned: "This determination [of liability] will neither deplete the debtor's assets or otherwise interfere with the administration of the bankruptcy proceeding, nor hinder the debtor's fresh start at the close of the proceeding. Rather, it will operate only as 'a prerequisite to recovery against another entity.'" *Id.* at 734 (quoting *In re Walker*, 927 F.2d 1138, 1142 (10th Cir.1991)). The

rationale of *Fernstrom Storage* applies with equal force in this case. *See also Foust v. Munson S.S. Lines*, 299 U.S. 77, 87, 57 S.Ct. 90, 95, 81 L.Ed. 49 (1936) (allowing wrongful death action against bankrupt to proceed despite stay for amount "not exceeding the amount of insurer's liability to the debtor under the policy"); *In re Holtkamp*, 669 F.2d 505, 508–09 (7th Cir.1982) (allowing personal injury action to proceed against debtor despite section 362(a)'s automatic stay provision where stay prohibited recovery from debtor and insurer provided defense to debtor in litigation).

In addition to the Eleventh Circuit in *Jet Florida*, the lower courts that have considered this issue under section 524 have agreed with our conclusion, apparently without exception. These courts have allowed actions against debtors to proceed for insurance recovery in spite of the discharge and concomitant injunction, either by explicitly modifying the injunction or by simply issuing an order allowing the suit. *See In re Catania*, 94 B.R. 250 (Bankr. D.Mass.1989); *In re White*, 73 B.R. 983 (Bankr.D.D.C.1987); *In re Mann*, 58 B.R. 953 (Bankr.W.D.Va.1986); *In re Hirsch*, 50 B.R. 8 (Bankr.S.D.Fla.1985); *In re McGraw*, 18 B.R. 140 (Bankr.W.D.Wis. 1982).

The only case cited by Shondel that arguably supports her position is *In re White Motor Credit*, 761 F.2d 270 (6th Cir.1985). There, 160 tort plaintiffs were permitted to obtain judgments in various courts against the debtor and then to collect from the debtor's insurers. Far from adopting Shondel's interpretation of a section 524 discharge, the court upheld the lower court's basic plan, reasoning that "a modification or temporary lifting of the permanent injunction is necessary" in furtherance of "the overall purposes of the Code." *Id.* at 274. The one brief portion of the opinion finding error in the lower court's order states that all pre-petition and post-petition claims that have not been filed with the bankruptcy court should be barred, although it proceeds to "express no opinion as to whether the District Court

should permit the filing of late claims at this stage of the proceedings." *Id.* at 275. Whether the court's ambiguous analysis has precedential effect does not matter, because in any event this circuit has clearly rejected a bar on untimely claims by holding in *Fernstrom Storage* that "failure to file a claim should not bar [a plaintiff] from recovering against [a debtor's] insurers." *Fernstrom Storage,* 938 F.2d at 733. Moreover, the problematic portion of *White Motor* is inapplicable, since in the present case no claims period had been established and, in fact, creditors were notified not to file claims.

Shondel also cites Illinois cases for the proposition that an insurer cannot be liable for a debt for which the insured is not primarily liable. But the cases do not support this assertion, at least not in the sense required for the argument. It is true that Illinois prohibits direct actions against insurers. *See Richardson v. Economy Fire & Casualty Co.,* 109 Ill.2d 41, 49–51, 92 Ill.Dec. 516, 520, 485 N.E.2d 327, 331 (1985); *Zegar v. Sears, Roebuck & Co.,* 211 Ill.App.3d 1025, 156 Ill.Dec. 454, 458, 570 N.E.2d 1176, 1180 (1st Dist.1991). This rule means that Craft must obtain a judgment against Shondel as a prerequisite to recovering from Shondel's insurer. But it simply says nothing about when or how such a judgment may be obtained against a debtor under the Bankruptcy Code.

A bankruptcy discharge and the accompanying injunction against subsequent actions are intended to give the debtor an economic "fresh start" in life. *See generally Lines v. Frederick,* 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970); Thomas H. Jackson, *The Fresh–Start Policy in Bankruptcy Law,* 98 Harv.L.Rev. 1393, 1396–97 (1985). But the "fresh-start" policy "is not intended to provide a method by which an insurer can escape its obligations based simply on the financial misfortunes of the insured." *Jet Florida,* 883 F.2d at 975.

### C. State Court Dismissal as Bar to Reopening of Shondel's Case

Shondel argues finally that the state court's dismissal of Craft's lawsuit precludes the reopening of her case through the principles of res judicata and full faith and credit and, in addition, argues that the decision to reopen represents an advisory opinion. Shondel's arguments rest on a fundamental misunderstanding of the nature of the proceedings below. The state court's dismissal of Craft's suit was based on the bankruptcy court's discharge injunction issued on July 9, 1986 pursuant to section 524. Bankr.Ct.Order (July 9, 1986). The bankruptcy court has done nothing to overturn, set aside or otherwise interfere with the state court's dismissal. It has, however, reopened the case and modified the injunction "to allow Ms. Craft to proceed with her wrongful death action against the Debtor but ... barr[ing] and enjoin[ing] [her] from collecting from the Debtor, the Debtor's property or property of the bankruptcy estate any judgment awarded in the wrongful death action." Bankr.Ct.Order (Oct. 26, 1989). The motivation for the modified injunction is immaterial as regards res judicata and full faith and credit; since there is now a new injunction, the state court's prior dismissal (under the previous injunction) is not in point. There has been no relitigation of claims or issues that were decided on the merits, *Bunker Ramo Corp. v. United Business Forms, Inc.,* 713 F.2d 1272, 1277 (7th Cir. 1983), because the "claims," the "issues," and indeed, "the merits" are all different in this proceeding by virtue of the modification of the injunction.

We have already concluded that the bankruptcy court had the authority to reopen this case. *See supra* section II.A. We also have little difficulty concluding that the bankruptcy court had the power to modify the injunction issued pursuant to section 524. Such modifications are frequently made in order to effectuate various provisions of the Bankruptcy Code, such as section 524(e)'s exemption of "any other entity" which may be liable on the debtor's behalf from the statutory injunction. *See, e.g., Jet Florida,* 883 F.2d at 973; *McGraw,* 18 B.R. at 140. Moreover, the power to modify a post-discharge injunction has been

held to be firmly within the "general bankruptcy powers." *Grand Union Equip.*, 167 F.2d at 960. Finally, the bankruptcy court's ability to modify its own injunction fits with the Code's policy of maintaining control over a bankruptcy discharge and avoiding abuses in other courts. *See generally* 3 *Collier* ¶ 524.01, at 524-4-9. Thus when the statutory injunction was added to the discharge provision in 1970 (under section 14f of the former Bankruptcy Act), the new version was summarized on the floor of the House of Representatives as providing that "the bankruptcy court would be vested with authority to determine not only the bankrupt's right to a discharge but also the effect of a discharge when granted." 116 Cong.Rec. 9549 (1970) (statement of Rep. Wiggins).

■ The argument that the decision below is an unconstitutional advisory opinion is also without merit. It is clear that the bankruptcy court gave actual relief here by modifying the injunction to allow Craft to proceed against Shondel in state court. Shondel argues that this case involves "a federal court providing an advisory opinion that the effect of a discharge ... does not include barring litigation to collect only insurance proceeds." Appellant's Br. at 39. Far from "advising" as to the effect of a discharge, the bankruptcy court issued an *injunction* with respect to the effect of a discharge, pursuant to its authority under the Code to reopen a case and modify a section 524 injunction. This decision affects the legal rights of the parties and is a "case" within the meaning of Article III.

### III.

For the foregoing reasons, the decision of the district court is

AFFIRMED.