**In re SECURITY SERVICES, INC., f/k/a Reliable Cartage Corp., Reliable Cartage East, Inc., World Leasing, Inc., Riss International Corp., Debtor.**

**Bankruptcy No. 89–42534–2–11.**

United States Bankruptcy Court, W.D. Missouri.

Dec. 20, 1996.

Randy S. Stalcup, Wichita, KS, for Fern Blount.

Patrick J. Doran, Kansas City, MO, for Debtor.

*ORDER*

FRANK W. KOGER, Chief Judge.

Debtor has filed a Motion to Reopen Bankruptcy Case and to Show Cause Why Sanctions Should Not Issue against Fern Blount on the ground that Blount has instituted state court proceedings in Chase County, Kansas, seeking to obtain a judgment against Debtor from which she hopes to collect under the liability insurance policy which had been held by the debtor prior to bankruptcy. Briefly, the facts are as follows.

Debtor filed for relief under Chapter 11 of the Bankruptcy Code in 1989. At that time,

23 people had potential personal injury actions against the debtor. Debtor had an insurance policy with National Union Fire Insurance Company under which Debtor was insured for up to $1,000,000 per personal injury claim, with a per claim indemnity amount of up to $250,000. After Debtor filed bankruptcy, it was necessary for this Court to deal with these potential causes of action, as Debtor would be liable under the insurance policies for up to the first $250,000 on each award.

As a result, this Court entered an order dated July 19, 1990, in which the procedures for the resolution of personal injury tort and wrongful death claims were enunciated. That order directed that any persons with such claims were to submit to an arbitration procedure, the details of which are not relevant herein, except that the order specifically stated that the procedure would preserve the rights of the parties, including their right to access to the courts, if such claims were not settled and resolved during the course of the procedure, but in order for the procedure to be effective, the Court restrained and enjoined all claimants asserting personal injury or wrongful death claims against the debtor from commencing or continuing any action against the debtor or its employees except as provided in the order.

In other words, personal injury claimants were required to participate in the arbitration procedure in order to pursue such a claim against the debtor. If the arbitration procedure failed in some way, i.e., if the claim was not settled or resolved during the course of the arbitration procedure, then the stay would be lifted and the claimant could exercise his right via the courts. However, if the claimant opted not to avail herself of the arbitration procedure, she could not pursue her action in court against the debtor company or its employees. There were 23 potential personal injury claims against the debtor in this case. Twenty-one of the 23 potential personal injury claims were resolved through the arbitration procedure. In one case, the automatic stay was lifted because the claimant participated in the arbitration procedure but the claim was not resolved thereby. Blount was the only claimant who did not participate in the arbitration procedure at all. There is no dispute Blount and her counsel received notice and had knowledge of the order.

In Blount's case, rather than following the claims resolution procedure set forth in the order, she filed a motion to lift the automatic stay, which was denied by this Court on October 23, 1990. That order stated:

Creditor and counsel for creditor have ignored totally the bankruptcy filing, the bar order, [and] the correspondence from debtor's counsel as to the bankruptcy. Creditor has never filed a claim, never applied for leave to file a claim out of time, and claims to have had no notice of the bankruptcy or the bar order. Nevertheless, creditor knew the style of the case and the case number.

At the moment creditor, because of the failure of her counsel to file a claim or to file a motion to allow creditor to file claim out of time is in a position where she has no enforceable claim against debtor. Since creditor does not have an enforceable claim, the stay should not be lifted since nothing would be served thereby.

As a result, the Chase County Court's stay order which had been entered due to the debtor's bankruptcy remained in place and until now, Blount took no further action regarding her personal injury action or otherwise attempted to participate in the arbitration procedure set out in this Court's order.

This Court entered a final decree on December 11, 1995, closing the Debtor's Chapter 11 case. Subsequently, on April 12, 1996, Blount filed with the Chase County Circuit Court a motion to lift its stay order which it had entered as a result of this bankruptcy. The Chase County Circuit Court vacated its previous stay order and Blount served written discovery requests on the debtor. As a result, Debtor filed the instant motion to reopen the bankruptcy case and has requested the Court to impose sanctions against Blount for pursuing the personal injury action despite this Court's orders and the closing of Debtor's case.

 Pursuant to § 350(b), this Court may reopen a case to administer assets, to

accord relief to the debtor, or for other cause. A decision to reopen a case for "other cause" lies within the discretion of bankruptcy court. *In re Shondel,* 950 F.2d 1301, 1304 (7th Cir.1991). In exercising that discretion, "the bankruptcy court should exercise its equitable powers with respect to substance and not technical considerations that will prevent substantial justice." *Id.* (citation omitted). For that reason, the bankruptcy judge has broad discretion to weigh the equitable factors in each case. *Id.* (citation omitted). On September 26, 1996, this Court entered an order reopening the case for the limited purpose of determining whether Blount's case in Chase County Circuit Court violates this Court's previous orders, and if so, whether Blount should be subject to sanctions for bringing that action. This Court conducted a hearing on the motion November 27th, and hereby makes the following findings.

Under 11 U.S.C. § 524(a)(2), a discharge in a bankruptcy case:

> operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

■ Clearly, Blount's potential personal injury action against Debtor was discharged and pursuant to § 524 she is prohibited from pursuing Debtor on it. Blount so concedes. However, in her response to Debtor's motion and accompanying memorandum of law in support, she maintains she is seeking only to obtain a judgment against the debtor so she can collect under its National Union insurance policy. She states that if she were to obtain a judgment in an amount less than $250,000 (Debtor's "deductible"), she would receive nothing. Only if she obtained a judgment in excess of $250,000 would she receive

anything, and in that case, only the amount in excess of $250,000.

Blount points to § 524(e), which states:

> Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.

She also cites Collier, which stated:

> [T]he provisions [of § 524] apply only with respect to the personal liability to the debtor. When it is necessary to commence or continue a suit against a debtor in order, for example, to establish liability of another, perhaps a surety, such suit would not be barred. Section 524(e) was intended for the benefit of the debtor but was not meant to affect the liability of third parties or to prevent establishing such liability to whatever means required.

3 Roy Babitt et al., *Collier on Bankruptcy* ¶ 524.01, at 524–16 (15th ed. 1991) (footnotes omitted).[1]

Despite rather significant case law in existence on the issue, Blount relied upon only a single case to support her position.[2] Debtor cited no cases to support its position. The Court conducted its own independent research which revealed that the case law would generally support Blount's position that the § 524 permanent injunction does not prevent a tort claimant from pursuing a debtor's insurance company where the debtor is not exposed to liability.[3] However, there is one very important distinction between this case and the ones supporting Blount's argument.

The distinction is that in this case, this Court *specifically addressed* the potential personal injury claims such as Blount's in its July 19, 1990, order and specifically stated that the claims resolution procedure would be the only means by which tort claimants could pursue their claims. The Court is aware of the analyses applied by the other

---

1. The most recently updated version of Collier's contains a similar message but elaborates further.

2. *In re McGraw,* 18 B.R. 140 (Bankr.W.D.Wis. 1982).

3. *See In re Gibson,* 172 B.R. 47, 49 (Bankr. W.D.Ark.1994), for an extensive listing of courts which have held that § 524(a)(2) does not bar suit against the debtor solely to determine liability in order to collect from a debtor's insurer.

courts deciding this issue and agrees with them; however, the Court does not believe that those rationales apply to the particular facts of this case and that this case presents an exception. As this Court specifically found in its July 19, 1990, order:

> 17. Because of the Debtor's self insured exposure for these years it cannot safely leave the defense of these claims to the appropriate insurer. Although the Debtor believes that its insurers are required to defend these claims, the Debtor, and therefore the creditors of this estate, will ultimately bear the cost of defending claims which occurred in the years 1984, 1985, 1986 and also with respect to claims which occurred in 1988 and 1989 if it is determined that the Debtor is obligated to indemnify National Union for losses and expenses for defending claims which arose during those years.

Furthermore, the Court specifically found that the protracted litigation involved in defending each of the claims would result in indefinite delay of payment to the creditors under the plan of reorganization. This Court further concluded in the order that:

> a balancing of the interests of the Movants and the interests of the Debtor and its creditors mandate the establishment of a simple, economical procedure for the resolution of tort claims that preserves the rights of the parties, including their right to access to the courts if such claims are not settled and resolved during the course of such procedure.

The most frequently used rationale by the courts for holding claimants could proceed against debtors' insurance companies is that the detriment to the debtor is minimal where the insurance company must defend the action and pay any award. In such cases, the courts have held that if the debtor's participation is merely nominal, i.e., it is akin to participating as a witness in a case, there is no reason for the insurance company to receive a "discharge" on the debtor's coattails to the detriment of an injured person with a legitimate personal injury claim.

In contrast, in the case at bar, this Court specifically found that due to the nature of the insurance policies, particularly because of the $250,000 "deductible," and the number of potential personal injury cases, that the insurance company may not have much incentive to defend the cases and that the cost to the debtor may be quite significant.

While the cost or detriment to the debtor may not be extremely significant in defending this single case, this Court found previously that in looking at the big picture, the cost of defending the claims would be devastating to Debtor's reorganization. This, of course, would work to the detriment of all the creditors as well, including those who obtained personal injury awards against the debtor. The whole plan worked because all of the claimants were required to follow the claims resolution procedure. If more of the personal injury claimants had done what Blount is attempting to do (ignore the claims resolution procedure), the plan would not have worked and everyone would have lost.

Furthermore, unlike the situation in the cases cited above, the Court believes that allowing Blount to proceed at this point would have the effect of punishing those claimants who did properly follow the claims resolution procedure while rewarding Blount for ignoring it. This Court refuses to do that. Every one of the other 23 claimants followed the procedure and obtained suitable relief. There is no dispute Blount was represented by counsel at that time and that she had notice and knowledge of this Court's orders. She did not object to or appeal this Court's orders at that time. She simply failed to abide by them and now wishes to avoid their effect, to the detriment of every other party involved in this case. The Court does not believe Blount should be allowed to do so.

This result is supported by the decision enunciated in *In re A.H. Robins Co.,* 880 F.2d 694 (4th Cir.1989), *cert. denied,* 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989). That case involved the personal injury claims of hundreds of women who had been injured through use of the Dalkon Shield. The debtor's plan of reorganization provided that a certain class of those claimants, if they opted to remain in that class, would be prevented from further pursuing their claims, even against the debtor's insurer. The bankrupt-

cy court, district court and Fourth Circuit approved the plan because, as in the case at bar, it was essential to the debtor's reorganization for the plan to contain that provision. *Id.* at 701–02. Relying on the bankruptcy court's § 105(a) equitable power, the Fourth Circuit held that an injunction against pursuing the insurance companies was appropriate under the circumstances because without it, the plan would fail and everyone would lose. *Id.* Further, the Court held that it was not necessary to literally apply § 524(e) in every case as a prohibition on the power of the bankruptcy courts, and that § 524(e) did not by its words "preclude the discharge of a guaranty when it has been accepted and confirmed as an integral part of reorganization." *Id.* at 702 (quoting *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1050 (5th Cir. 1987)). *Accord In re Specialty Equipment Companies, Inc.*, 3 F.3d 1043, 1047 (7th Cir. 1993) (holding that § 524(e) provides only that a discharge does not affect the liability of third parties, but does not purport to limit or restrain the power of the bankruptcy court to otherwise grant a release to a third party; a per se rule disfavoring all releases of third party liability would be unwarranted, if not a misreading of § 524(e)); *In re Master Mortgage Inv. Fund, Inc.*, 168 B.R. 930 (Bankr.W.D.Mo.1994) (this Court holding that under appropriate, limited circumstances, a bankruptcy court has the power to issue a permanent injunction or third-party release to protect nondebtors from creditor actions and § 524(e) does not prohibit the issuance of such an injunction or release).

As the Seventh Circuit reasoned in *In re Specialty Equip. Cos.*, this case does not involve a situation where a guarantor is attempting to discharge gratuitously its own existing secondary liability on the coattails of a bankrupt debtor's discharge. 3 F.3d at 1049. Rather, here we have a situation in which this Court has determined it was necessary for the debtor's rehabilitation to structure the personal injury claims in a particular fashion. The insurance companies participated and paid the appropriate awards. As mentioned above, the Court believes allowing Blount to pursue her claim despite this Court's previous order would work a substantial injustice on the debtor, on its creditors, on the other personal injury claimants, as well as on the insurance company.

For those reasons, this Court hereby ORDERS, pursuant to its authority under 11 U.S.C. § 105,[4] and the Supremacy Clause of the United States Constitution,[5] that the stay order in the Chase County Circuit Court in Kansas be reinstated and the action against Debtor in that court be dismissed. The Court further ORDERS Fern Blount to cease her attempt to pursue her personal injury claim against the debtor herein. Debtor's request for sanctions is DENIED. However, Blount and her counsel are warned that any further attempts to circumvent the prior ruling of this Court (other than appeal of this order, which will allow the District Court to consider the issue of sanctions) will be regarded as suggesting the imposition of sanctions.

---

4. *See In re Paris Industries Corp.*, 132 B.R. 504, 508–09 (D.Me.1991); *In re Chateaugay Corp., Reomar, Inc.*, 93 B.R. 26, 29 (S.D.N.Y.1988).

5. U.S.C.A. Const. Art. 1, § 8, cl. 4.