In re SPECIAL METALS
CORPORATION, et
al.

Century Indemnity Company,
Appellant,

v.

Special Metals Corporation,
et al., Appellees.

Civil Action No. 05–21–HRW.

United States District Court,
E.D. Kentucky,
Ashland Division.

March 27, 2006.

W. Thomas Bunch, II, Lexington, KY,
Leonard P. Goldberger, Philadelphia, PA,
for Appellant.

Gregory R. Schaaf, Lexington, KY, for
Special Metals Corporation.

### MEMORANDUM OPINION
### AND ORDER

WILHOIT, District Judge.

This matter is before the Court upon
Century Indemnity Company's Appeal
from certain orders entered by the Bank-
ruptcy Court, Judge William S. Howard
presiding, specifically, an Order Overruling
the Amended Supplemental Objection to
Certain Amended Calwell Asbestos Claims
(Docket No. 2337) and the Supplemental
Objection to Certain Amended Calwell As-
bestos Claims (Docket No. 2307) dated
December 7, 2004 (Docket No. 2368) (the
"Order"). This matter has been fully
briefed by the parties. The Court, having
reviewed the record and being otherwise
sufficiently advised, hereby affirms the de-
cision of the Bankruptcy Court.

### I. BACKGROUND

This matter arises out of the Chapter 11
bankruptcy of Special Metals Corporation,
Huntington Alloys Corporation, f/k/a Inco

Alloys International, Inc., d/b/a Hunting-
ton Alloys, Special Metals Domestic Sales
Corp., and A-1 Wire Tech, Inc. (collective-
ly, the "Debtors"). The Debtors filed their
jointly-administered Chapter 11 cases on
March 27, 2002 (the "Filing Date") in the
United States Bankruptcy Court for the
Eastern District of Kentucky, and thereaf-
ter, operated their businesses as debtors-
in-possession.

On August 7, 2003, the Debtors filed
their Second Amended Joint Plan of Reor-
ganization (the "Plan"). The Plan was ac-
companied by a Second Amended Disclo-
sure Statement to Accompany Joint
Amended Plan of Reorganization (the
"Disclosure Statement"), which was ap-
proved by the Bankruptcy Court on Au-
gust 11, 2003. The Bankruptcy Court en-
tered an order confirming the Plan (the
"Confirmation Order") on September 29,
2003.[1]

Prior to the Filing Date, the Debtors
were subject to at least 4,800 claims for
bodily injuries allegedly arising from expo-
sure to asbestos, chemical solvents, and/or
other hazardous substances. Many of the
claimants are represented by The Law
Offices of Stuart Calwell, PLLC. Two hun-
dred sixty-five claimants represented by
the Calwell Practice, PLLC, who had as-
bestos litigation claims pending in West
Virginia state courts (collectively, the "Cal-
well Asbestos Claims"), filed proofs of
claims with the Bankruptcy Court on Sep-
tember 30, 2002. All but sixty-eight of the
Calwell Asbestos Claims are unliquidated
in amount.

The Plan provides that the Calwell As-
bestos Claims are "Insurance Claims" and
defines "Insurance Claim" as follows:

1. Century, Travelers Casualty and Surety
("Travelers"), Employers Insurance of Wau-
sau ("Wausau") and Liberty Mutual Insur-
ance Company ("Liberty Mutual") appealed
to this Court from the confirmation order and

attacked the insurance provisions of the plan.
However, this Court affirmed the Bankruptcy
Court's confirmation of the plan on March 12,
2004. No appeal to the Sixth Circuit was
taken.

Any claim against the Debtors to the extent it may be covered and payable under any Insurance Policy of the Debtors including workers' compensation claims which are not self-insured; provided, however, all Insurance Claims shall be considered Disputed Claims until such time as any Insurance Claim becomes an allowed claim.

Plan § 1.55.

Section 5.3(D) of the Plan provides that:

All Insurance Claims are disputed claims. Any Insurance Claim for which a timely proof of claim was filed in these Reorganization Cases will be determined and liquidated in the administrative or judicial tribunal(s) in which it was pending on the Effective Date, or if no action was pending on the Effective date[2], in any administrative or judicial tribunal of appropriate jurisdiction, or in accordant with any alternative dispute resolution or similar proceedings as the same may be approve d by order of a court of competent jurisdiction. Any Insurance Claim determined and liquidated pursuant to applicable nonbankruptcy law that has become a Final Order, or in the alternative dispute resolution or similar proceeding as same may be approved by order of a court of competent jurisdiction, shall be treated and paid in accordance with the terms of the applicable Insurance Policy, and otherwise be included in Class 6A to the extent not covered by an Insurance Policy.

The Plan further provides that:

Each holder of an Allowed Insurance Claim shall be entitled to receive the proceeds derived from any applicable Insurance Policy, but shall receive no other distributions from the Debtors or the Reorganized Debtors on account of Allowed Insurance Claims.

Plan § 4.7.

On May 24, 2004, Century, together with Employers Insurance of Wausau, Liberty Mutual Insurance Company and Travelers Casualty and Surety Company (collectively, the "Insurers") filed an Objection of Certain Insurers to Allowance of Certain Insurance Claims (the "Claims Objection"). The Claims Objection sought the disallowance and/or reduction of certain Disputed Insurance Claims including the Calwell Asbestos Claims on the basis that, *inter alia,* the proofs of claim for certain holders of Insurance claims are not sufficiently documented and are not self-sustaining because they failed to include any fact-specific information or supporting documentation as to the nature of the "personal injury/wrongful death" being alleged and/or the link between the claimant and his or her alleged exposure to asbestos and any product manufacture, designed, distributed or sold by the Debtors.

In this action, Century, as successor to CCI Insurance Company and Insurance Company of North America, and both individually and as successor to Indemnity Insurance Company of North America (collectively, "Century"), appeal from the Bankruptcy Court's Order overruling both the Amended Supplemental Objection to Certain Amended Calwell Asbestos Claims (Docket No. 2337) and the Supplemental Objection to Certain Amended Calwell Asbestos Claims (Docket No. 2307) dated December 7, 2004 (Docket No. 2368) (the "Order"). Century requests that the Court (1) reverse the Order as to the holders of the late-filed Additional Amended Calwell Asbestos Claims and all the Calwell Asbestos Claims for which amended proofs of claim were never filed, in

---

**2.** The Effective Date of the Plan is November 26, 2003.

violation of the Initial Order; and (2) reverse the Order or, at a minimum, remand to the Bankruptcy Court for more specific findings, with respect to the forty-nine (49) timely-filed Amended Calwell Asbestos Clams.

For the reasons set forth more fully herein, the Court concludes that the Century's appeal from the Bankruptcy Court's order is without merit, and the Court will therefore affirm the decision of the Bankruptcy Court.

## II. STANDARD OF REVIEW

■■■ This Court reviews the Bankruptcy Court's conclusions of law de novo and upholds its findings of fact unless they are clearly erroneous. *See, In re 255 Park Plaza Assocs. Ltd. P'ship,* 100 F.3d 1214, 1216 (6th Cir.1996). "De novo review requires the [reviewer] to review questions of law independent of the bankruptcy court's determination." *First Union Mortgage Corp. v. Eubanks (In re Eubanks),* 219 B.R. 468, 469 (6th Cir. BAP 1998). "De novo means deciding the issue as if it had not been heard before." *Tedeschi v. Falvo (In re Falvo),* 227 B.R. 662, 663 (6th Cir. BAP 1998). Whether proof of a claim is facially defective and, therefore, unentitled to a presumption of prima facie validity is a question of law subject to de novo review. *See, First National Bank v. Circle J Dairy, Inc. (In re Circle J Dairy, Inc.),* 112 B.R. 297, 299 (W.D.Ark. 1989).

■ However, inasmuch as the Bankruptcy Court's Order involves an interpretation of its own prior orders and acts, it is subject only to review for a clear abuse of discretion. *See Enodis Corp. v. Employers Ins. of Wausau (In re Consolidated Industries),* 360 F.3d 712, 716 (7th Cir. 2004). The same is true when a Bankruptcy Court is asked to interpret the terms of a confirmed plan. *In re Terex Corp.,* 984 F.2d 170 (6th Cir.1993) (holding that although the bankruptcy court referred to explicit provisions of the Bankruptcy Code in ruling on creditor's request for interest on post-petition unpaid insurance premiums, court did not rely on or interpret Bankruptcy Code so as to render its ruling a legal conclusion subject to de novo review, but rather, court's ruling constituted interpretation of Chapter 11 plan pursuant to its equitable powers which was subject to full deference and abuse of discretion standard). *See also In re Dial Business Forms, Inc.,* 341 F.3d 738, 744 (8th Cir. 2003).

## III. ANALYSIS

■ Appellants complain that the Bankruptcy Court incorrectly allowed the Calwell asbestos claims for the purposes of proceeding with litigation in the West Virginia State Courts. The allowance/disallowance of claims is governed by Section 502 of the Bankruptcy Code, 11 U.S.C. § 502. Proofs of Claims fall under Section 501 of the Bankruptcy Code as well as Fed. R. Bankr.P. 3001. Specifically, Appellants charge that the Proofs of Claims were facially defective as they did not meet the requirements of Fed. R. Bankr.P. 3001 and applicable case law. Rule 3001 provides in part:

"(a) Form and Content

A proof of claim is a written statement setting forth a creditor's claim. A proof of claim shall conform substantially to the appropriate Official Form
. . .

. . . (f) A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."

In addition, the case law has articulated more specifically what is required to make

a claim on the bankruptcy estate that is entitled to prima facie validity. For instance, *In re Circle J Dairy, Inc.,* states that a legally sufficient claim must:

1) be in writing

2) make a demand on the debtor's estate

3) express the intent to hold the debtor liable for the debt

4) be properly filed; and

5) be based upon facts which would allow, as a matter of equity, to have the document accepted as a proof of claim.

112 B.R. 297, 300 (W.D.Ark.1989).

The parties have engaged in protracted debate on the briefs regarding specifically what the Bankruptcy Court's jurisdiction entailed regarding those Proofs of Claims. The claims are all personal injury claims, and therefore not subject to liquidation by the Bankruptcy Court. *See* 28 U.S.C. § 157(b)(2)(B). However, Appellants maintain that the Bankruptcy Court nonetheless was obligated to determine the prima facie validity of the claims, an inquiry and procedure entirely distinct from liquidation under the theory of *In re Dow Corning Corp.,* 215 B.R. 346 (Bankr. E.D.Mich.1997).

One item of great consequence is overlooked, however. Appellants' arguments regarding the legal distinction between disallowance for facial invalidity and liquidation · by the Bankruptcy Court, while well-reasoned, assume claims made upon the **estate** of the Debtors. The authority cited by Appellants, while good law, deals exclusively in cases where the claims in question sought funds from the **estate.** The reason for strict adherence· to the enumerated requirements for proofs of claims in cases where estate funds are sought should be obvious.

However, where the holder of the claim seeks funds from a source outside the bankruptcy estate, the requirements are not so clear as that guiding rationale is not present. The requirements for a valid proof of claim are driven by a concern for notice to all creditors seeking to reach the limited pool of funds of the estate. "The rationale for requiring the filing of a formal proof of claim or interest in accordance with section 501 is based upon ensuring that 'all those involved in the proceeding will be made aware of the claims against the debtor's estate,' " 4 Collier On Bankruptcy ¶ 501.01. 15th ed.2006. "The purpose of the proof of claim is to alert the court, trustee, and other creditors, as well as the debtor, to claims against the estate." *In re Daystar of California,* 122 B.R. 406, 408 (Bankr. C.D.Cal.1990). This rationale does not apply to the instant case.

The Calwell asbestos claims are not claims on the estate. They seek an entirely separate pot of insurance funds. In fact, the Plan itself provides as much. It states:

> Each holder of an Allowed Insurance Claim shall be entitled to receive the proceeds derived from any applicable Insurance Policy, but **shall receive no other distributions from the Debtors or the Reorganized Debtors** on account of Allowed Insurance Claims.

Plan § 4.7 (emphasis added).

Appellants' attacks on the validity of the proofs of claims and their reliance upon *Dow Corning* are therefore misplaced. The distinction between determination and liquidation and a finding of prima facie validity is immaterial. Moreover, any technical or procedural failures in the Calwell proofs of claims does not operate to bar the claimants' recovery in the West Virginia state courts against the insurers.

See *In re Fernstrom Storage and Van Company,* 938 F.2d 731 (7th Cir.1991).

In *Fernstrom* the Seventh Circuit affirmed a lower court ruling that a claimant's failure to file a timely proof of claim in the debtor's Chapter 11 case did not bar the claimant from recovering against the debtor's insurers. The Seventh Circuit reasoned that allowing the claimant to pursue an action against the debtor to establish liability that would be satisfied by a third party would not "deplete the debtor's assets or otherwise interfere with the administration of the bankruptcy proceeding, nor hinder the debtor's fresh start at the close of the proceeding." *Id* at 734.

It was undisputed that the claimant in *Fernstrom* had failed to file a timely proof of claim, and like the claimants at bar, the *Fernstrom* claimant had agreed that its claim would be satisfied solely from the proceeds of the debtor's insurance policy. The Court highlighted those facts as it allowed the claimant relief from the automatic stay to proceed with district court case filed prior to the bankruptcy. The assets in the bankruptcy estate were not in jeopardy, and the court stated that under those circumstances, "the notice function served by the rule that only proven claims will be allowed to share in the distribution is not frustrated by allowing a creditor that has not filed a proof of claim to proceed against the debtor." *Id.*

As a matter of interpreting and enforcing the confirmed plan, the Bankruptcy Court was within its discretion to find that Plan intended the Calwell claimants seek their remedies against the insurers in state court. During the hearing on the Insurers' objections, the Bankruptcy Judge stated that the "essence of this plan and Section 5.3D is that the insurance claims be litigated in a forum that can actually try a tort case which does not include the Bankruptcy Court." Appellants' attempts to get around the Plan's objective in that regard are without merit, and the attempt to attack these claims by reliance upon rules designed to protect the limited funds of the bankruptcy estate are unavailing.

This Court agrees with the Bankruptcy Court and further finds, under the logic of *In re Fernstrom,* the technical and procedural shortcomings of the Calwell proofs of claims do not disqualify them as insurance claims or bar the litigation in the West Virginia state courts.

## IV. CONCLUSION

Accordingly, for the reasons stated above, the Court hereby AFFIRMS the Bankruptcy Court. A separate judgment shall issue this day in conformity with the Court's Memorandum Opinion.